PEOPLE v. MARTHINSON.

1. CRIMINAL LAW — CONFESSION NOT ADMISSIBLE UNLESS MADE VOLUNTARILY.

   In a prosecution for committing a crime, a confession is not to be considered by the jury until they have first determined whether it was freely and voluntarily made.[1]

2. SAME — INSTRUCTIONS — WHETHER CONFESSION INDUCED BY PROMISES SHOULD HAVE BEEN SUBMITTED TO JURY.

   Where there was evidence that a confession was induced by promises of benefits to the defendant, he was entitled to an instruction that, if the jury found that they were

[1]Criminal Law, 16 C. J. § 1468.
As to when confession is voluntary, see notes in 18 L. R. A. (N. S.) 772; 50 L. R. A. (N. S.) 1077.

in fact made, the confession could not be used as evidence against him.[2]

3. SAME—TRUTH OF CONFESSION NOT AN ELEMENT IN DETERMIN-ING WHETHER MADE VOLUNTARILY.

An instruction that, to exclude a confession as evidence, the compulsion used to obtain it must have so overcome defendant's will that he made it "regardless of the facts, contrary to the facts," is objectionable, since the truth of a confession has no place in determining whether it was voluntarily made.[3]

4. SAME—WITNESSES—DISCRETION OF COURT.

Whether a witness, who, because he claimed that at the time neither he nor the defendant or his counsel knew he was to be called, violated the court's order excluding the witnesses, should have been allowed to testify, was a matter within the discretion of the court.[4]

Error to Wexford; Lamb (Fred S.), J.     Submitted April 15, 1926.     (Docket No. 142.)     Decided June 7, 1926.

Anton Marthinson was convicted of wilfully destroying and mutilating monuments in a cemetery, and sentenced to pay a fine of $500 and imprisonment for one year in the county jail.     Reversed.

*E. J. Millington* and *G. E. McArthur,* for appellant.

*Andrew B. Dougherty,* Attorney General, and *Fred C. Wetmore,* Prosecuting Attorney, for the people.

McDONALD, J.     The defendant was charged with wilfully destroying and mutilating certain monuments and gravestones in Mt. Carmel cemetery, in the city of Cadillac, Michigan.     On the morning of July 4, 1922, a number of monuments in that cemetery were found tipped over and broken.     Suspicion pointed to the defendant.     He was arrested.     To the officers he made a full confession, and to others oral ad-

---

[2]Criminal Law, 16 C. J. § 2419; [3]Id., 16 C. J. § 1510; [4]Id., 16 C. J. § 2128.

missions of guilt which were received in evidence on the trial. He was convicted and sentenced, and has brought the case here on writ of error. There are 16 assignments of error. Two of them are of sufficient merit to require discussion.

1. Did the court err in his instructions to the jury on the law of confessions, and in refusing to submit the requests proffered by the defendant? After the defendant's arrest he was confined in a cell in the jail at Grand Rapids. While there he made a written confession which he signed and swore to before a notary public. It is not necessary to recite the details of this confession or the methods which the defendant claims were used to induce him to make it. He claims that it was obtained from him by coercion and promises. The people claim that it was a voluntary confession and was in no way induced by promises or coercion.

As to how they should consider this confession the court gave the jury the following instruction:

"I will say in that connection and at the outset, that a confession or admission by a person of the commission of an offense may be used against him provided it is procured without threats, duress, or overcoming in any manner the will of the person charged with the offense. So then it simply simmers itself down to this: Whether or not this confession was made voluntarily by the respondent, that is without undue compulsion, to such an extent that his will was broken down and that he made it by reason of these threats and compulsion and that he would not have made it if they had not been made. In other words, was his will broken down to the extent that he made the confession regardless of the fact and to get out of the talk and interviews of the officers? In that connection I want to say this to you: That these officers or any other officers have a perfect right to interview a man charged with a crime, the commission of an offense, and if they do not go any further than as testified under the testimony in this case and under the facts and circumstances surrounding the case, and do not

go to such an extent that they break down and overcome the will of the accused so that he makes a confession contrary to the facts and makes a confession that he would not have made had it not been for the acts of compulsion and threats at the time on the part of the officers, then that confession may be used by the jury in connection with the fact that an offense had been committed in fixing the responsibility therefor. I will say in that connection that if you find the intention was to force one, within the meaning of what I have just told you, and that this was not a voluntary confession within the meaning of the law as I have stated to you here, then it cannot be used against him and in that case there would be no proof of the connection of this man or the implication of this man with the offense charged."

One of the objections to this instruction is that it avoided any reference to confessions secured by promises or by inducements and limited the consideration of the jury as to whether it was voluntary solely to duress and compulsion. We think this objection is well taken. A confession is not to be considered by the jury as evidence until they have first determined whether it was freely and voluntarily made. Where, as in this case, there is evidence of inducements by way of promises of benefits to the defendant, he is entitled to an instruction that if the jury find that they were in fact made, the confession could not be used as evidence against him. In *People* v. *Brockett,* 195 Mich. 169, this court said:

"Proof of a confession is never admissible unless it is voluntarily made, and by the word 'voluntary' is meant that the confession must be of the free will and accord of the defendant, without coercion, whether from fear of any threat of harm, promise, or inducement by hope of reward, or method known as 'sweating.' "

The defendant testified, in substance, that the officers spent hours with him in his cell during the night that he was arrested, persistently urging him to con-

fess; that he was placed in a filthy cell, and was all unstrung by the experience that he was undergoing; that they promised him that if he would make a confession the court would be lenient with him; that the people of Cadillac wanted to be fair with him and that he could get out of it by paying $50 or $60 which would be the cost of replacing the monuments; that if he signed the confession he could go home to his friends, and that if he did not do so he would have to remain in confinement; that they had kept one man there for 72 days; that, if he were convicted, it meant five years' imprisonment for him, but that if he signed the confession there would be "nothing to it." In view of this testimony, the defendant was entitled to an instruction covering the subject of confessions obtained by promises of benefits. His counsel offered a proper request, which the court should either have submitted to the jury or covered in the instructions given.. The entire case against the defendant rested on his confession. It was of vital importance to him that his claim as to why it should not be. considered as evidence be fully explained to the jury.

We also think that there was error in that portion of the instruction wherein the jury was told that, to exclude. the. confession as evidence, the compulsion used must have so overcome his will that he made it, "regardless of.the facts, contrary to the facts." The truth of the statement in the confession has no place in determining whether it was voluntarily made. Before it can be used as evidence, before its truth can be inquired into by the jury, they must first determine whether it was voluntary. The first question for the jury is, How was it obtained? and they must not be influenced in determining that question by their belief in its truth or falsity. The court probably did not intend it, but the effect of the language used made the truth of the confession one of the elements to be

considered in determining whether it was made without compulsion.

2. The second question presented by the record relates to the exclusion of the testimony of Leroy Crawford, a witness produced by the defendant. At the opening of the trial counsel for the defendant made a motion for the exclusion of the witnesses from the court room. The testimony of Mr. Crawford was excluded because he had violated this order. It is claimed, and appears to be a fact, that he did not know that he was to be called as a witness. Neither the defendant nor his counsel knew at that time that he possessed any knowledge of matters material to the issue, and did not expect to use him as a witness until a short time before he was called. Whether, under the circumstances, he should have been permitted to testify was a matter within the discretion of the court. As the question will not arise on a new trial, we do not deem it necessary to determine whether there was an abuse of discretion in excluding his testimony.

We have considered all of the other assignments of error, but do not discuss them because they are clearly without merit.

The judgment of conviction is reversed and a new trial granted.

BIRD, C. J., and SHARPE, SNOW, STEERE, FELLOWS, WIEST, and CLARK, JJ., concurred.