PEOPLE v NIXTEN

Docket No. 86016. Submitted August 4, 1986, at Grand Rapids. Decided March 25, 1987.

Jerry Nixten was convicted of delivery of cocaine and was sentenced to from 13⅓ to 20 years in prison, Mecosta Circuit Court, Lawrence C. Root, J. Defendant appealed, raising several issues.

The Court of Appeals *held:*

1. The trial judge did not abuse his discretion in finding that defendant had not been entrapped. The police were informed by Elva Rushton that she had purchased cocaine from defendant on a number of occasions. Rushton agreed to cooperate with the police and her information proved to be accurate after the police observed defendant selling cocaine to her. Defendant was eventually arrested after he sold cocaine to Rushton and an undercover police officer inside Rushton's residence as Don Nixten, Debbie Nixten and Lynn Young waited outside in a car. The record does not support defendant's claim that he was an innocent individual who was maneuvered by the police into participating in a sale nor does the record disclose pressure, overreaching, illegal acts or reprehensible deceit on the part of the police.

2. The trial judge erred in ruling that Debbie Nixten and Lynn Young were not res gestae witnesses when defendant's attorney requested that they be produced as res gestae witnesses following the testimony at trial of defendant and Don Nixten. However, since defendant had knowledge of the existence of the claimed res gestae witnesses and failed to move for their endorsement until after the completion of the prosecu-

REFERENCES

Am Jur 2d, Criminal Law §§ 202-204, 206, 717 *et seq.*; 953 *et seq.*

Am Jur 2d, Evidence §§ 708 *et seq.*

Am Jur 2d, Indictments and Informations §§ 56 *et seq.*

Burden of proof as to entrapment defense—state cases. 52 ALR4th 775.

Modern status of the law concerning entrapment to commit narcotics offense—state cases. 62 ALR3d 110.

Entrapment to commit offense with respect to narcotics law. 33 ALR2d 883.

tion's case, defendant waived his right to the endorsement and production of the claimed res gestae witnesses.

3. The trial court erred so as to require reversal in refusing to permit Lynn Young to testify when the defense attempted to call her as a witness on the bases argued by the prosecution, i.e., the defendant's failure during opening statement to identify her as a witness and Young's presence in the courtroom throughout the trial. Neither party had sought an order for the sequestration of witnesses and defendant's constitutional right to call witnesses was violated by the trial court's ruling in this regard.

Reversed and remanded for a new trial.

1. CRIMINAL LAW — ENTRAPMENT — POLICE CONDUCT.

The adoption of the objective standard of entrapment does not preclude the use of undercover agents by the police, but only police conduct so reprehensible that it cannot be condoned by the judicial system.

2. CRIMINAL LAW — RES GESTAE WITNESSES — PRODUCTION OF WITNESSES — WAIVER.

A defendant waives his right to the endorsement and production of a res gestae witness where the defendant knows of the existence of the res gestae witness and fails to move for endorsement of that witness until the completion of the prosecution's case.

3. CRIMINAL LAW — WITNESSES — CONSTITUTIONAL LAW.

A defendant's right to call witnesses is guaranteed by the United States and Michigan Constitutions and is a fundamental element of the adversary process (US Const, Am VI; Const 1963, art 1, § 20).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *James R. Samuels,* Prosecuting Attorney, and *J. Ronald Kaplansky,* Assistant Attorney General, for the people.

State Appellate Defender (by *Stuart B. Lev*), for defendant on appeal.

Before: HOOD, P.J., and D. E. HOLBROOK, JR., and W. R. PETERSON,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

PER CURIAM. Defendant, charged and convicted of delivery of more than 50 and less than 225 grams of a mixture containing cocaine, MCL 333.7401(1) and (2)(a)(iii); MSA 14.15(7401)(1) and (2)(a)(iii), was sentenced to a prison term of from 13⅓ years to 20 years, and appeals as of right.

Defendant first came to the attention of the police when Elva Rushton, arrested for possession of cocaine, said that the cocaine had been obtained from defendant. She told the police that she had bought cocaine from him on various occasions and that his brother, Don, was also involved.

Rushton had met defendant in Flint late in 1977. The evidence does not indicate much about the acquaintance that continued thereafter, but, according to Rushton, it included occasional purchases from defendant of one-ounce quantities of cocaine. After a period of residence in Nevada, Rushton returned to Michigan late in 1983, taking residence in Barryton. She renewed her acquaintance with defendant early in 1984 and soon thereafter bought from him the cocaine for the possession of which she was arrested.

Rushton entered into an agreement to assist the police in the investigation of defendant and his brother in return for the dismissal of the charges against her. The plan called for Rushton to introduce an undercover agent to defendant and she eventually did so. First, however, she called defendant several times; she told him of her arrest and said that she needed money to cover some checks, including one to her lawyer, and that she wanted cocaine for resale which her boyfriend would finance. The truth of her story to the police was established when defendant responded by selling an ounce of cocaine to Rushton on July 27, 1984, in a monitored transaction.

Defendant's version of events up to this point

was not substantially different from that of Rushton and the police except that he denied ever having sold any cocaine to Rushton. He said that Rushton first asked him for a loan to pay her attorney and then called repeatedly to ask him for cocaine. He acknowledged that he never asked her to stop calling, but said he told her that he did not know where she could get any cocaine. He acknowledged that he was present when Rushton made the monitored cocaine purchase on July 27, but he claimed that he had nothing to do with the transaction.

Following the July 27 transaction, Rushton introduced the police undercover agent, Deputy Gary Taylor, to defendant, representing that he was her boyfriend. Rushton and Taylor both talked to defendant by telephone about another purchase, this time of two ounces of cocaine, and arrangements were made for the sale to take place on September 15, 1984. The evidence indicates that the calls and the time lapse of seven weeks were occasioned because defendant was out of cocaine and not because of any reluctance on his part to make the sale.

On September 15, defendant, his brother Donald, Donald's wife, Debbie, and defendant's girlfriend, Lynn Young, drove to Rushton's home. Rushton and Taylor were there, along with another undercover officer who was pretending to be asleep on a couch. Defendant went to Rushton's door and asked if everything was okay. When Rushton said it was, defendant went back to the car and then returned to the house where he took a package of two ounces of cocaine from his shirt and gave it to Taylor in exchange for $4,600. Defendant counted the money twice and left.

Defendant's testimony at an entrapment hearing

and at trial differs from that of Rushton and Taylor only as to defendant's role in the transaction. He said he had helped Rushton and Taylor get the cocaine from his brother, that any deal by Rushton and Taylor was with his brother, that on September 15 he went to Rushton's house with his brother, that his brother asked him to take the package into the house and told him how much money to get, and that he suspected that the package contained cocaine. At the entrapment hearing, he testified that he helped set up the purchase from his brother because of friendship for, and fear of, Rushton. The fear, he said, was because Rushton had had her husband killed for his insurance.[1] He acknowledged that she had never threatened him and that he was not really personally afraid of her, but that he knew what she was capable of doing and was afraid of what she would do if he did not help her get some cocaine.

Defendant's first claim is that the trial judge erred in failing to find that entrapment occurred justifying dismissal of the charge. The claim that the police, knowing that defendant was not a drug dealer, maneuvered him into participating in a sale, as in *People v LaBate,* 122 Mich App 644; 332 NW2d 555 (1983), and *People v Killian,* 117 Mich App 220; 323 NW2d 660 (1982), lv den 414 Mich 944 (1982), is contrary to the facts. Here the police did not know that defendant was not a dealer; to the contrary, although Rushton told them that she did not know personally whether defendant sold

[1] Defendant claimed that shortly after he had first met Rushton, she had asked him if he knew anyone who would kill her husband, to which he said no, and that thereafter he learned that her husband had been murdered. Defendant's brother gave similar testimony at the entrapment hearing. Rushton denied such a conversation and testified that she had not yet met defendant when her husband was killed.

cocaine to others,[2] they knew that he had sold to her on a number of occasions and verified her story by monitoring another sale to her by defendant. Neither do these facts disclose pressure, overreaching, illegal acts or reprehensible deceit on the part of the police. As stated in *People v Alford,* 405 Mich 570, 590; 275 NW2d 484 (1979): "The adoption of the objective standard [of entrapment] does not automatically preclude the use of undercover agents, but only conduct so reprehensible that it cannot be condoned by the judicial system." We find no abuse of discretion in the finding of the trial judge that there was no entrapment.

After defendant and his brother had testified at trial, defendant's attorney requested that Debbie Nixten and Lynn Young be produced as res gestae witnesses. Although they had accompanied defendant and his brother in driving to the Rushton residence when the cocaine was delivered, neither had been endorsed as witnesses on the information. The trial judge ruled that the women were not res gestae witnesses since they had remained in the car while the sale took place within the Rushton home. This seems to be an unduly restrictive view of the continuum of the offense, *People v Austin,* 95 Mich App 662; 291 NW2d 160 (1980), but his ruling was correct for a different reason.

Where one has knowledge of the existence of a res gestae witness and fails to move for endorsement of that witness until after the completion of the prosecution's case, he waives his right to the endorsement and production of the witness. *People v Leggions,* 149 Mich App 612; 386 NW2d 614 (1986), lv den 426 Mich 863 (1986). That is the case here where the defense was playing games with

[2] Cf., *People v Steele,* 150 Mich App 728; 389 NW2d 164 (1986).

the issue. Defendant's own testimony establishes the presence of the women at the time and place of the offense and his knowledge of their identity. Debbie Nixten was his sister-in-law; Lynn Young was his girlfriend. Rather than moving for their endorsement, defense counsel wrote a letter to the prosecutor asking that Lynn Young be produced at trial; he also included her name in a listing of defense witnesses pursuant to a pretrial conference;[3] and she was, in fact, present in the courtroom during the trial. With that knowledge and course of conduct he waived his right to compliance with the res gestae statute, MCL 767.40; MSA 28.980.

In the course of the argument as to whether the women were res gestae witnesses, the prosecutor went on to object that not only did he not have to call them but that the defense should not be allowed to call Lynn Young as a witness, because she had been present in the courtroom throughout the trial. The court excluded her testimony, a ruling which was error.

It is true that the trial courts have discretion to order sequestration of witnesses[4] and discretion in instances of violation of such an order to exclude[5] or to allow[6] the testimony of the offending wit-

---

[3] The designation of Lynn Young but not of Debbie Nixten by defendant may have something to do with the fact that Mrs. Nixten was facing trial as an accessory in another similar case. The fact, of course, did not excuse the prosecution from endorsing her in this case. *People v Cortez,* 131 Mich App 316; 346 NW2d 540 (1984).

[4] MRE 615; *People v Martin,* 386 Mich 407; 192 NW2d 215 (1971).

[5] *People v Marthinson,* 235 Mich 393; 209 NW 99 (1926); *People v Dickerson,* 62 Mich App 457; 233 NW2d 612 (1975), lv den 396 Mich 840 (1976); *People v Jones,* 75 Mich App 261; 254 NW2d 863 (1977); *People v Walton,* 76 Mich App 1; 255 NW2d 640 (1977).·

[6] *Coburn v Goldberg,* 326 Mich 280; 40 NW2d 150 (1949); *People v Solak,* 146 Mich App 659; 382 NW2d 495 (1985); *People v Cyr,* 113 Mich App 213; 317 NW2d 857 (1982), lv den 414 Mich 888 (1982); *People v Boose,* 109 Mich App 455; 311 NW2d 390 (1981).

ness.[7] The prosecutor's claim that the trial judge was enforcing an order for the sequestration of all defense witnesses, however, is untrue and a misstatement both of his own objection at trial and the trial judge's ruling. Neither party made a written or oral motion for the sequestration of witnesses, nor did the court make a sequestration order in writing or from the bench.[8] Rather, the prosecutor's objection seems to have been that defendant, by not mentioning Lynn Young as a defense witness in his opening statements, had "misrepresented" who the defense witnesses would be, and that it would therefore be "unfair" to allow the defendant to call his girlfriend who had heard all the testimony. The trial judge upheld the prosecutor's objection, saying that defendant had "abandoned" calling Ms. Young as a witness.

The prosecutor does not attempt to justify such a novel exclusionary theory here, and we can find no rational basis for upholding a nonexistent sequestration order which the judge might have made had the prosecuting attorney thought to ask for it.

Having founded its appellate argument on the claim that there was a sequestration order, the prosecution has not addressed the question of whether the court's refusal to allow Lynn Young to testify for the defense is error requiring reversal.[9]

---

[7] As to the exercise of such discretion and abuse thereof, see *United States v Schaefer,* 299 F2d 265 (CA 7, 1962), cert den 370 US 917; 82 S Ct 1553; 8 L Ed 2d 497 (1962); 14 ALR3d 1.

[8] From the arguments and the comments of the trial judge, it appears that sequestration had been discussed during an informal discussion in chambers, and that defense counsel had agreed to the prosecutor's request that defendant's brother be sequestered during defendant's testimony.

[9] We note that there is authority for the proposition that barring the testimony of a defense witness may, under some circumstances, be error requiring reversal even where there was a violation by the

In *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709, 713 (1972), the Court adopted the following statement from *People v Wichman,* 15 Mich App 110, 116; 166 NW2d 298, 302 (1968):

Where it is claimed that error is harmless, two inquiries are pertinent. First, is the error so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless? See *People v Bigge,* 288 Mich 417, 421 [285 NW2d 5 (1939)]; *People v Berry,* 10 Mich App 469, 474 [157 NW2d 310 (1968)]; *People v Mosley,* 338 Mich 559, 566 [61 NW2d 785 (1968)]. See, also, *Chapman v California,* 386 US 18, 23, 24; 87 S Ct 824; 17 L Ed 2d 705 [1967], rehearing denied 386 US 987; 87 S Ct 1283; 18 L Ed 2d 241 [1967]. Second, if not so basic, can we declare a belief that the error was harmless beyond a reasonable doubt? See *People v Liggett,* 378 Mich 706, 716, 717 [148 NW2d 784 (1967)]; *Chapman v California, supra.*

As noted in *People v Swan,* 56 Mich App 22, 32; 223 NW2d 346 (1974), "[a]n error may be intolerably offensive . . . if it deprives the defendant of a fundamental element of the adversary process . . . ." See *People v Mobley,* 390 Mich 57; 210 NW2d 327 (1973). The right to call witnesses, guaranteed by US Const, Am VI, and Const 1963, art 1, § 20, is fundamental to the adversary process, *People v Pena,* 383 Mich 402; 175 NW2d 767 (1970), and the trial court's denial of the right is error requiring a new trial.

We address a further claim of error since it may be addressed upon retrial. Prior to trial the prosecution made a motion in limine to exclude any

witness of a sequestration order since the constitutional right to present defense witnesses is involved. *State v Lee Doon,* 7 Wash 308; 34 P 1103 (1893); *Mitchell v State,* 28 Ala App 119; 180 So 119 (1938), cert den 235 Ala 530; 180 So 123 (1938); Anno: *Effect of witness' violation of order of exclusion,* 14 ALR3d 16.

reference to or evidence of Elva Rushton's involvement in the death of her husband. The defense responded that the evidence was admissible for a number of reasons, including its bearing on defendant's state of mind in connection with a defense of duress. The trial judge ruled that duress by a police agent was purely an entrapment issue, allowing the evidence in the entrapment hearing but excluding it at trial. The ruling was in error.

On retrial, cross-examination of Elva Rushton on the matter is appropriate cross-examination to credit under MRE 608(b); *People v Mitchell,* 402 Mich 506, 515; 265 NW2d 163 (1978). Extrinsic evidence of the matter may become admissible as bearing on defendant's state of mind if that becomes relevant by proof of other facts essential to the defense of duress. *People v Luther,* 394 Mich 619; 232 NW2d 184 (1975).

Reversed and remanded for a new trial.