# State of Vermont v. Robert J. Gulley

[580 A.2d 980]

No. 89-227

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed August 10, 1990

*Jeffrey L. Amestoy,* Attorney General, *Susan R. Harritt,* Assistant Attorney General, and *Gayle Middleton,* Law Clerk (On the Brief), Montpelier, for Plaintiff-Appellee.

*Walter M. Morris, Jr.,* Defender General, and *Anna Saxman,* Appellate Defender, Montpelier, for Defendant-Appellant.

**Gibson, J.** Defendant Robert J. Gulley appeals from the district court's exclusion of his mother's testimony at a suppression hearing and the court's subsequent denial of his motion to suppress statements in which he admitted to having stolen $1300. We affirm.

## I.

Upon learning that defendant might have been involved in the theft of $1300 from a bus driver, Bennington Police Officer William Derosia called the Gulley household on several occasions to arrange an interview with defendant at the police station. In response to those calls, defendant's mother drove her nineteen-year-old son to the station during regular business hours, where he was questioned by Officer Derosia. The testimony is conflicting as to what exactly Officer Derosia said to defendant over the telephone and at the station before *Miranda* warnings were given and as to whether defendant's mother was present during the entire interview.

Upon defendant's arrival at the station, Officer Derosia informed defendant that he wanted to talk about the theft of some money from a bus driver. The officer explained the evidence against defendant and the potential penalties involved. When

defendant attempted to confess to the theft, Officer Derosia interrupted him in order to give *Miranda* warnings. After the warnings were read, defendant confessed to the theft and then signed a written statement detailing his confession. Defendant's mother also signed the *Miranda* form and the statement; however, there is disagreement over the point at which the mother joined her son and Officer Derosia. Defendant claims that halfway through the warnings he asked the officer if he could see his mother and, at that point, he and Officer Derosia went outside to bring defendant's mother into the station.

Approximately two months later, after being cited for grand larceny, defendant filed a motion seeking suppression of the oral and written statements made to Officer Derosia. At the suppression hearing, defense counsel attempted to call defendant's mother to the stand following the testimony of Officer Derosia and defendant. The court refused to allow defendant's mother to testify because she had been present in the courtroom throughout the prior testimony and defense counsel had not informed the State that she would be testifying at the hearing. A pretrial order had mandated that defendant list all witnesses expected to testify at *trial*, but no request or order for the sequestration of witnesses preceded the court's ruling at the suppression hearing. Defendant did not object to the exclusion of his mother's testimony at the time of the court's ruling, nor did he subsequently move to reopen the evidence; however, a week after the hearing, he filed an offer of proof regarding her testimony together with his requested findings of fact. Thereafter, the court denied the motion to suppress, whereupon defendant entered a conditional plea of no contest.

On appeal, defendant argues that (1) the trial court's exclusion of his mother's testimony violated the United States and Vermont Constitutions; (2) the court failed to make adequate findings regarding certain disputed facts; and (3) the court erred in denying defendant's motion to suppress.

## II.

Defendant first contends that the court's exclusion of his mother's testimony violated state law as well as his right to

present witnesses under the Sixth and Fourteenth Amendments to the United States Constitution and Chapter I, Article 10 of the Vermont Constitution. We reject these contentions since defendant has failed to show that the court's ruling prejudicially affected his substantial rights. See V.R.Cr.P. 52(a).

At the request of a party or upon its own motion, the trial court may order the exclusion of witnesses so they cannot hear the testimony of other witnesses. V.R.E. 615. As noted, in this case neither party requested a separation of witnesses, and the court never made a sequestration order. In its pretrial discovery order, issued prior to the suppression hearing, the court ordered the defense attorney to disclose to the prosecuting attorney the names of all witnesses to be called at *trial*. Apparently, defendant's mother was not on the list provided; in any event, the State did not expect defendant to call her to testify at the suppression hearing.

■■ Neither the Sixth Amendment nor Chapter I, Article 10 forbids preclusion of the testimony of a surprise witness as a discovery sanction, in appropriate circumstances. See *Taylor v. Illinois*, 484 U.S. 400, 410 (1988); *State v. Edwards*, 153 Vt. 649, 649, 569 A.2d 1075, 1076 (1989) (mem.). Nevertheless, under the instant circumstances—where there was no sequestration order and no violation of a discovery order—we conclude that the court erred by excluding the testimony of defendant's mother. See, e.g., *State v. Jones*, 354 So. 2d 530, 532 (La. 1978) (exclusion of witness's testimony is constitutionally impermissible absent a knowing violation of sequestration order by defendant or defendant's counsel); *People v. Nixten*, 160 Mich. App. 203, 209-10, 408 N.W.2d 77, 81 (1987) (no rational basis for upholding nonexistent sequestration order that the judge might have made had the prosecuting attorney thought to ask for it).

■ Although erroneous, the court's ruling will not warrant reversal, however, unless defendant can show that the error prejudicially affected his substantial rights. V.R.Cr.P. 52(a). We conclude that it did not. "[B]oth the federal and state rights of compulsory process are mandated only where the witnesses to be called will offer testimony which is competent, relevant and

material to the defense." *State v. Kennison*, 149 Vt. 643, 649, 546 A.2d 190, 194 (1987) (exclusion of testimony was harmless error where offer of proof did not sufficiently establish materiality of proposed testimony), *cert. denied*, 486 U.S. 1011 (1988). It is defendant's burden to show that the excluded testimony would have been material. *Id.*

In defendant's offer of proof, he stated that his mother would have testified as follows: (1) She did not accompany her son into the police station; (2) Thirty to forty-five minutes elapsed while she waited for her son outside the police station; (3) A police officer accompanied her son when defendant came out and asked her to join them; (4) She does not remember hearing the *Miranda* warnings prior to the section that refers to hiring a lawyer.

■ Defendant based his motion to suppress on the nature of the statements made to him when he arrived at the station and the fact that he was seated in a chair in close proximity to handcuffs hanging on the wall, not on the length of the interview or his mother's absence from it. Defendant, who was not a minor, never argued that his mother was prevented from joining him during the interview at the police station or that there was any reluctance on the part of the police to include her when defendant requested her presence. The court found that it was unclear whether defendant's mother had been present at the beginning of the interview but that she had been present when he made his confession. Further, although defendant represents that his mother does not remember hearing all of the *Miranda* warnings, she did sign the *Miranda* form and must therefore at least have had an opportunity to read it. Thus, although we believe defendant's mother should have been allowed to testify, we are not convinced of the materiality of the excluded evidence. Accordingly, we hold that the court's error was harmless, and defendant's state and federal constitutional rights to present evidence on his own behalf were not violated. See *id.*; *State v. Warren*, 437 So. 2d 836, 840 (La. 1983) (erroneous exclusion of relevant, but cumulative testimony by family member was not prejudicial).

## III.

■ Defendant next argues that the court's failure to make findings concerning whether the officer threatened him on the telephone and whether defendant's mother was present throughout the questioning constitute reversible error. We find no merit in this argument. Based on conflicting testimony, the court concluded that Officer Derosia "request[ed]" that defendant come to the police station for an interview. See *State v. Olson*, 153 Vt. 226, 232, 571 A.2d 619, 623 (1989) (great deference is given to trial court findings). Moreover, although the court found that it could not determine from the conflicting testimony whether defendant's mother had been present throughout the interview, it did find that she was present when the *Miranda* warnings were given to defendant and when he gave his confession. The court's findings sufficiently support its determination that defendant's statements were voluntarily offered.

## IV.

Finally, defendant argues that the trial court's denial of his motion to suppress the statements he made at the police station constitutes reversible error. In support of his contention, defendant relies heavily on *State v. Brunell*, 150 Vt. 388, 554 A.2d 242 (1988), where we upheld the trial court's suppression of statements obtained from a murder suspect held "in custody." We conclude that *Brunell* is distinguishable and that the trial court's denial of defendant's suppression order in the instant case is not clearly erroneous.

In *Brunell*, three police officers arrived at the home of the suspect's parents at approximately ten o'clock in the evening on the day of the crime and asked the suspect and his wife to accompany them to the police station. Although one of the officers told the couple that they did not have to go to the station, the chief of police told the suspect's mother in the presence of the couple that they had to go that night while the events were still fresh in their minds. After refusing to allow the suspect's brother to accompany them, the police drove the couple thirty minutes in a police cruiser to the police station, where they

were immediately separated and questioned. The police informed the suspect at the outset that he was not under arrest or in custody, that he did not have to talk, and that they would give him a ride home when he wanted. The suspect then agreed to be interviewed. After the suspect made incriminating statements as a result of the questioning, the police gave him *Miranda* warnings; he then signed a written waiver of those rights and gave a taped interview in which he reiterated his earlier statements and acknowledged that his presence at the police station was voluntary. The police drove him home at approximately one o'clock in the morning.

The trial court concluded that the statements obtained from the defendant had to be suppressed because he had been "in custody"—a reasonable person under similar circumstances would not have believed that he or she was free to leave or to refuse to answer questions. *Id.* at 391, 554 A.2d at 244. Emphasizing the chief of police's insistence that the couple come to the station that night, the thirty-minute drive in a police cruiser late at night, the refusal to permit the suspect's brother to accompany the couple, and the lengthy interrogation at the station, we held that the trial court's conclusion was not erroneous as a matter of law. *Id.* at 392, 554 A.2d at 244.

In contrast, in the instant case, defendant's mother drove defendant to the police station during regular business hours several days after the crime was committed. Although defendant claimed that Officer Derosia had told him on the phone that if he did not come in charges would be filed, the court's determination that defendant voluntarily came to the station was reasonable and within the evidence. Moreover, as noted, there was no evidence that defendant's mother was prevented from accompanying her son at the interview; indeed, defendant concedes that he and the officer went to get his mother immediately upon his request.

The present case is much more similar to the case contrasted in *Brunell—Oregon v. Mathiason*, 429 U.S. 492 (1977)—than to *Brunell* itself. In *Mathiason*, after the police called and left a card at a suspect's apartment asking him to come to the station for an interview, the suspect arrived at the station, was inter-

viewed for about thirty minutes, and then left. Stressing the suspect's voluntary arrival and his brief stay at the station, the United States Supreme Court summarily reversed the lower court's grant of the suppression motion. *Id.* at 494–96.

Defendant points out that, in contrasting the instant case and *Brunell*, the trial court stated that defendant was released to go home after the interview. He claims that this statement is false and requires reversal. We disagree. It is unclear from the record what transpired after defendant signed the statement; we note, however, that the citation to appear is dated October 2, the day after the interview, and the information charging defendant with grand larceny was not filed until the date of his court appearance, one month later. In any event, whether or not defendant was released following the interview does not distinguish this case from *Brunell* and does not affect our analysis here.

 Although the State bears a heavy burden of showing a knowing and intelligent waiver of *Miranda* rights, the trial court determines the weight and sufficiency of evidence and the credibility of witnesses. *State v. Stanislaw*, 153 Vt. 517, 529, 573 A.2d 286, 293 (1990). In evaluating the State's claim of a *Miranda* waiver, "we will uphold trial court rulings that are not clearly erroneous and that are supported by credible evidence, even though inconsistencies or substantial evidence to the contrary may exist." *Id.* The court's conclusion that, based on the totality of the circumstances in this case, a reasonable person would have believed that he or she was free to leave or to refuse to answer police questioning, was not clearly erroneous. See *State v. Willis*, 145 Vt. 459, 475, 494 A.2d 108, 117 (1985).

*Affirmed.*