*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 17, 2025
11:45 AM

Plaintiff-Appellee,

v

No. 370091
Chippewa Circuit Court
LC No. 2022-005549-FH

SCOTT ALAN FRANKLIN,

Defendant-Appellant.

Before: GADOLA, C.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals by right his bench-trial convictions of two counts of delivery of methamphetamine, MCL 333.7401(2)(b)(i). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to prison terms of 15 to 25 years, with credit for 436 days served. We affirm, but remand for the ministerial task of correcting the judgment of sentence.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In April 2021, a confidential informant (CI) contacted Sergeant Gapcyznski of the Sault Ste Marie Police Department and indicated that he could purchase methamphetamine from defendant. Sergeant Gapcyznski was working with the Trident Drug Task Force, a multi-agency task force. The CI had worked for the task force previously and was "working off" a charge of possession of methamphetamine.

On April 10, 2021, Sergeant Gapcyznski met with the CI in preparation for a "controlled buy" with marked currency. Sergeant Gapcyznski searched the CI's person and vehicle, finding no controlled substances or other contraband. Sergeant Gapcyznski then gave the CI cash and an audio recorder. The CI drove to defendant's home, followed by Sergeant Gapcyznski. Other officers from the task force were also involved in the surveillance of the CI and defendant's home. The CI entered defendant's home; a short time later, the CI and defendant left in the CI's vehicle. Sergeant Gapcyznski followed the vehicle to a hotel. There the CI obtained approximately one gram of methamphetamine from defendant, which he then provided to Sergeant Gapcyznski along with the audio recorder.

-1-

On April 14, 2021, the CI conducted another controlled buy from defendant. Sergeant Gapcyznski again searched the CI beforehand and gave the CI currency and an audio recorder. The CI went to defendant's home and met with defendant in the garage. The CI obtained from defendant approximately another gram of methamphetamine, which he then gave to Sergeant Gapcyznski.

The substances obtained by defendant were tested by the Michigan State Police Crime Lab and confirmed to be methamphetamine. Defendant was arrested and charged with two counts of delivery of methamphetamine.

During defendant's preliminary examination, the CI testified that he had purchased methamphetamine from defendant on April 10 and April 14. During cross-examination, the CI was asked whether he had received any consideration for his testimony; the CI responded that he was "working off what could've been some charges." The prosecution interjected and stated that the CI should be warned of his Fifth Amendment right against self-incrimination. The trial court advised the CI of his right to invoke the Fifth Amendment; however, as it became apparent that defense counsel would be asking further questions that might implicate the CI, the trial court adjourned the proceedings and appointed counsel for the CI. When the preliminary examination resumed a week later, the prosecution informed the court that the CI had entered into an immunity agreement regarding his testimony, and it requested that the trial court enter an order granting the CI immunity. The trial court did so. The CI then testified that he had been arrested for possession of methamphetamine and was "working off" potential charges by doing controlled buys for the task force.

At defendant's bench trial, the CI testified that he had purchased methamphetamine from defendant as described. On cross-examination, the CI admitted that he had been previously convicted of drug-related felonies and assault, had been addicted to opiates in the past, and had prior experience serving as a CI. He testified that he had stabbed a drug dealer in 2009 while he was working as a CI, had pleaded guilty to a felony charge of assault with intent to commit great bodily harm, and had been sent to prison. The CI had not been convicted of any felonies involving theft or dishonesty in the last ten years. Sergeant Gapcyznski and other officers testified regarding their roles in the controlled buys. Audio recordings of the conversations between defendant and the CI were admitted into evidence for the trial court's review. A portion of one audio recording was played during the trial. Defendant presented no witnesses and did not testify.

The trial court found that the CI was a reliable witness and that his testimony was credible. Defendant was convicted as described. At sentencing, the trial court noted that defendant's offense variable (OV) score was zero and his prior record variable (PRV) score was 85; the trial court additionally noted that defendant was being sentenced as a fourth-offense habitual offender. Defendant's counsel did not object to the scoring of any variables. Defendant's sentencing guidelines range was 72 to 240 months (6 to 20 years). The trial court found that a minimum sentence of 15 years in prison was appropriate for each conviction, considering defendant's extensive criminal history. The trial court sentenced defendant as described. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to find him guilty of delivery of methamphetamine. We disagree.

We review de novo a sufficiency-of-the-evidence claim, *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016), examining the evidence in the light most favorable to the prosecution to determine whether sufficient evidence has been presented to allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt, see *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013).

Due process of law requires that the prosecution in a criminal case introduce sufficient evidence of each element of the offenses charged to justify a rational factfinder in finding the defendant guilty beyond a reasonable doubt. See *People v Nowack,* 462 Mich 392, 399; 614 NW2d 78 (2000). To sustain a conviction for delivery of methamphetamine, the prosecution is required to prove that (1) the defendant delivered a controlled substance; (2) the substance was methamphetamine; and (3) the defendant knew he or she was delivering methamphetamine. Accord *People v Meshell*, 265 Mich App 616, 619; 696 NW2d 754 (2005) (stating the elements of manufacturing methamphetamine). "A prosecutor need not present direct evidence of a defendant's guilt. Rather, '[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.' " *People v Williams,* 294 Mich App 461, 471; 811 NW2d 88 (2011) (alteration in original), quoting *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *Nowack*, 462 Mich at 400. "The credibility of witnesses and the weight accorded to evidence are questions for the jury, and any conflict in the evidence must be resolved in the prosecutor's favor." *People v Harrison*, 283 Mich App 374, 378; 768 NW2d 98 (2009). This Court will not resolve credibility issues anew on appeal. *People v Milstead*, 250 Mich App 391, 404; 648 NW2d 648 (2002).

In this case, defendant argues that the CI was not a credible witness and that it was only through the CI's testimony that the prosecution established the elements of the charged offenses beyond a reasonable doubt. But defendant has not established that this Court should take the extraordinary step of substituting its own credibility determination for that of the fact-finder. A reviewing court must defer to the factfinder's credibility determination unless a witness's testimony was "patently incredible," or the testimony was directly contradicted by other evidence and "so far impeached that it was deprived of all probative value," or "seriously impeached and the case marked by uncertainties or discrepancies." *People v Knepper*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363191); slip op at 5, quoting *People v Lemmon*, 465 Mich 625, 643-644; NW2d 129 (1998).

Defendant argues that the CI was not a credible witness because he had a history of drug abuse and "buying his way out of convictions by selling testimony." Defendant also points out that the CI committed a felony assault while working as a CI in 2009. The CI's history was no secret at trial, and defense counsel was permitted to cross-examine the CI regarding his history of drug addiction, his time as a confidential informant, and his assault conviction. The CI's testimony concerning the controlled buy was not patently incredible, i.e., it did not contradict indisputable

physical facts and was not inherently implausible. See *Lemmon*, 465 Mich at 645-646. And that testimony was not directly contradicted by any other witness's testimony or other evidence, nor was it seriously impeached in a case marked by uncertainties and discrepancies. See *id.* In fact, the CI's testimony was supported by the testimony of police witnesses, audio recordings, and physical evidence. Although defendant argues that the CI is inherently untrustworthy, he has not provided this Court with any reason to doubt the CI's testimony other than the CI's poor character. We conclude that defendant has not cleared the "high bar" that a defendant must clear to obtain relief based on a witness's credibility. *Knepper*, ___ Mich App at ___; slip op at 6; see also *People v Baskerville*, 333 Mich App 276, 284; 963 NW2d 620 (2020).

### III. STANDARD FOUR BRIEF

Defendant raises numerous claims of error in his Standard 4 brief.[1] We conclude that none of them warrant relief.

### A. FIFTH AMENDMENT VIOLATION

Defendant argues that the CI's Fifth Amendment right against self-incrimination was violated at the initial preliminary examination, when he testified without having been granted immunity from prosecution. Defendant lacks standing to assert a Fifth Amendment violation on behalf of another person. The Fifth Amendment privilege against self-incrimination is personal to each witness; a defendant "simply has no standing to either claim the privilege for a witness or complain about an error on the part of the trial judge in overruling the witness's attempt to assert it." See US Const, am V; Const 1963, art 1, § 17; *People v St Onge*, 63 Mich App 16, 18; 233 NW2d 874 (1975), citing *Goldstein v United States*, 316 US 114; 62 S Ct 1000; 86 L Ed 1312 (1942). Defendant is not entitled to relief on this issue.

### B. ENTRAPMENT

Defendant also argues that he was entrapped by the Trident Drug Enforcement Task Force. We disagree. Defendant did not raise the affirmative defense of entrapment before the trial court, and the trial court did not hold an evidentiary hearing and make a determination regarding whether entrapment occurred. We review unpreserved claims of error for plain error affecting substantial rights. See *People v Borgne*, 483 Mich 178, 184; 768 NW2d 290 (2009).

The purpose of the entrapment defense is to "deter abuse of authority by precluding criminal liability for acts that were instigated by the police and committed by those not predisposed to such acts." *People v Akhmedov*, 297 Mich App 745, 752; 825 NW2d 688 (2012). "However, the police do not engage in entrapment merely by providing a defendant with the opportunity to commit a crime[.]" *Id.* "Entrapment occurs if (1) the police engage in impermissible conduct that would induce an otherwise law-abiding person to commit a crime in similar circumstances or (2) the police engage in conduct so reprehensible that the court cannot tolerate it." *People v Fyda*,

---

[1] A supplemental appellate brief filed *in propria persona* by a criminal defendant under Michigan Supreme Court Administrative Order No. 2004-6. See *People v Good*, 346 Mich App 275, 283; 12 NW3d 79 (2023).

288 Mich App 446, 456; 793 NW2d 712 (2010). "Reprehensible conduct by an informant may be attributed to the police if a sufficient agency relationship exists between the informant and the police." *Akhmedov*, 297 Mich App at 754.

In this case, defendant does not argue that the police engaged in impermissible conduct that would induce an otherwise law-abiding person to commit a crime in similar circumstances; rather, he argues that the police engaged in reprehensible conduct by allowing the CI to perform controlled buys despite his history as a violent offender and drug addict. We disagree; regardless of the CI's poor character or past behavior, the record does not show that the CI engaged in reprehensible acts during the controlled buys in this case, or that the CI otherwise engaged in reprehensible conduct directed at defendant to induce him to sell methamphetamine. See *People v Crawford*, 143 Mich App 348, 353; 372 NW2d 550 (1985), aff'd 429 Mich 151 (1987) (holding that reprehensible conduct will not support a finding of entrapment unless it induced or otherwise instigated the particular crime at issue). The use of undercover agents and confidential informants is not reprehensible conduct per se. *People v Nixten*, 160 Mich App 203, 208; 408 NW2d 77 (1987). Defendant has not demonstrated that he was entrapped.

## C. *BRADY* VIOLATION

Defendant also argues that the prosecution withheld exculpatory evidence, specifically information about the CI's background and history of working as a CI, in violation of *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). We disagree. Defendant did not raise this issue below; accordingly it is unpreserved and reviewed for plain error affecting substantial rights. *People v Burger*, 331 Mich App 504, 516; 953 NW2d 424 (2020); *Borgne*, 483 Mich at 184.

The elements of a *Brady* violation are that "(1) the prosecution has suppressed evidence (2) that is favorable to the accused and (3) that is material." *People Dimambro*, 318 Mich App 204, 213; 897 NW2d 233 (2016) (citation omitted). The prosecution does not have a duty to seek out exculpatory evidence, but it does have a duty to disclose any favorable evidence "known to the others acting on the government's behalf in the case, including the police," even if that evidence is unknown to the individual prosecutor assigned to the case. *Id.*, quoting *Kyles v Whitley*, 514 US 419, 437; 115 S Ct 1555; 131 L Ed 2d 490 (1995). In other words, "[t]he government is held responsible for evidence within its control." *Kyles*, 514 US at 437.

In this case, defendant has not identified any specific evidence within the government's control that was not disclosed to defendant and his counsel. Defense counsel appeared to be well-versed in the CI's history at trial, including his prior experience as a confidential informant, his prior drug use, and his assault conviction. Defendant does not explain what additional information on the CI's background was allegedly suppressed by the government. Accordingly, defendant has failed to establish even the existence of exculpatory evidence, much less its suppression, and is not entitled to relief on this issue.

## D. ADDICT-INFORMER INSTRUCTION

Defendant also argues that the trial court erred by failing to give an "addict-informer" instruction during his bench trial. We disagree. "In a bench trial, the trial court is presumed to

know the applicable law." *People v Lanzo Constr Co*, 272 Mich App 470, 484; 726 NW2d 746 (2006). Defendant has not cited any authority that requires a trial court to explicitly instruct itself on a particular issue before issuing its verdict after a bench trial. The trial court heard testimony concerning the CI's past drug use, and defendant has not rebutted the presumption that the court considered the CI's testimony appropriately.

### E. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that his trial counsel was ineffective in several respects. We disagree. Defendant did not move for a new trial or a *Ginther*[2] hearing; accordingly, this Court's review is limited to mistakes that are apparent on the record. See *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). We review de novo whether a particular act or omission by counsel fell below an objective standard of reasonableness under prevailing professional norms and prejudiced the defendant. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), vacated not in relevant part 493 Mich 864 (2012).

Defendant argues that his counsel was ineffective for failing to object to several of the unpreserved issues we have already addressed. As stated, we find no errors requiring reversal regarding those issues. Objections by defendant's counsel would have been futile, and counsel is not ineffective for failing to make futile objections. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant also argues that his trial counsel was ineffective for failing to make a motion for a directed verdict or new trial, and therefore failing to preserve an appellate challenge to the great weight of the evidence. We disagree. The standard for evaluating the evidence in a motion for a directed verdict of acquittal are the same as those involving a challenge to the sufficiency of the evidence. See *People v Hampton*, 407 Mich 354, 366-368; 285 NW2d 284 (1979); *People v Powell*, 278 Mich App 318, 320 n 1; 750 NW2d 607 (2008). The trial court must consider the evidence presented up to the time of the motion in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the charged crime were proved beyond a reasonable doubt. See *People v Lemmon*, 456 Mich 625, 634; 576 NW2d 129 (1998); *People v Hartuniewicz*, 294 Mich App 237, 242; 816 NW2d 442 (2011). Accordingly, for the reasons already stated, a motion for a directed verdict at the close of the prosecution's proofs would have been futile, and counsel was not required to make such a motion. *Ericksen*, 288 Mich App at 201.

Regarding a motion for a new trial on the grounds that the verdict was against the great weight of the evidence, a trial court should only grant such a motion when the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result. *Lemmon*, 456 Mich at 642; *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). Defendant argues that the verdict was against the great weight of the evidence because the CI was not a credible witness. Again, absent exceptional circumstances, a reviewing court may not substitute its view of the credibility of witnesses for that of the factfinder. See *Lemmon*, 456

---

[2] *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973).

Mich at 642. "Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). For the reasons already stated, no exceptional circumstances exist that would warrant overriding the fact-finder's credibility determination, the evidence reasonably supported the verdict, and there is no evidence that the verdict was the result of causes outside the record. Accordingly, a motion for a new trial would have been futile. *Ericksen*, 288 Mich App at 201.

Defendant has not demonstrated that his trial counsel was ineffective. *Gioglio (On Remand)*, 296 Mich App at 20.

## F. SENTENCING

Defendant also argues that the trial court violated his Sixth Amendment rights at sentencing by increasing his sentence through the use of judge-found facts, and that his sentences were unreasonable. We disagree in both respects. Defendant did not challenge the accuracy of any information in his presentencing report (PSIR) or challenge the scoring of his OVs or PRVs and the resulting guidelines range. Accordingly, to the extent defendant challenges any of the information relied upon by the sentencing court, that issue is unpreserved and reviewed for plain error affecting substantial rights. MCL 769.34(10); MCR 6.429(C); *People v Lloyd*, 284 Mich App 703, 706; 774 NW2d 347 (2009); *Borgne*, 483 Mich at 184. We review a challenge to the reasonableness of a within-guidelines sentence for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017).

Regarding defendant's claim that the sentencing court violated his Sixth-Amendment rights, a sentencing court may not increase the mandatory minimum sentence imposed on a defendant by reference to facts that were not found by a jury. See *People v Lockridge*, 498 Mich 358, 389-3909; 870 NW2d 502 (2015). However, because Michigan's sentencing guidelines are now advisory, a sentencing court may rely on judge-found facts when assessing points for OVs. See *id.* at 392 n 28.

In this case, the record does not support defendant's claim that the trial court relied on judge-found facts to increase defendant's sentencing guidelines range. There is no indication that the trial court found any facts at all at the sentencing hearing, much less applied them to increase defendant's guidelines range. Indeed, defendant acknowledges that he was assessed zero points for his OVs. Defendant has not established a constitutional error on this issue, plain or otherwise. *Borgne*, 483 Mich at 184.

Regarding defendant's general challenge to the reasonableness of his sentences, a reasonable sentence is one that is proportionate to both the offense and the offender. *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). In this case, defendant's sentences are within his calculated sentencing guidelines range. Accordingly, they are presumptively reasonable. See *People v Posey*, 512 Mich 317, 349-357; 1 NW2d 101 (2023). Defendant has failed to rebut this presumption. Although defendant argues that his OV score supports a lower sentence, the record shows that the trial court considered defendant's OV score of zero along with his PRV score of 85. Defendant's OV score placed him at the lowest OV level for Class B felonies, while his PRV

score placed him at the highest PRV level. See MCL 777.63. Defendant's guidelines range was also significantly enhanced by his status as a fourth-offense habitual offender. See MCL 769.12. In light of defendant's extensive criminal history, defendant has not demonstrated that the trial court's selection of a minimum sentence within the top half of his guidelines range was an abuse of discretion. *Steanhouse*, 500 Mich at 471.

We further conclude, although defendant does not raise this issue, that defendant's judgment of sentence requires clarification. Both parties refer to defendant's sentences as consecutive. However, the trial court did not express on the record that it intended to impose consecutive sentences. Nor would consecutive sentences be appropriate for defendant's convictions under MCL 333.7401(2)(b)(i). See MCL 333.7401(3) ("A term of imprisonment imposed *under subsection (2)(a)* may be imposed to run consecutively with any term of imprisonment imposed for the commission of another felony.") (emphasis added). However, defendant's judgment of sentence is somewhat ambiguous regarding whether his sentences are concurrent or consecutive. The box for imposing sentences consecutively is *not* marked, and defendant's two sentences are listed as having the same start date, i.e., February 27, 2024. Yet, a subordinate box indicating that sentences are to be served consecutively to "each other" *is* marked:

| Count | SENTENCE DATE | MINIMUM Years | Mos. | Days | MAXIMUM Years | Mos. | Days | DATE SENTENCE BEGINS | JAIL CREDIT Mos. | Days | OTHER INFORMATION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | 02/27/2024 | 15 | | | 25 | | | 02/27/2024 | . | 436 | |
| 02 | 02/27/2024 | 15 | | | 25 | | | 02/27/2024 | | 436 | |

☐ 9. Sentence(s) to be served consecutively to    (If this item is not checked, the sentence is concurrent.)
☒ each other.    ☐ case numbers _____ .

The only reasonable conclusion is that the subordinate box that is marked in Item 9 was marked in error. Accordingly, we remand for the sole purpose of ministerially correcting defendant's judgment of sentence to indicate that his sentences are concurrent, not consecutive. See *People v Ericksen*, 288 Mich App 192, 206; 793 NW2d 120 (2010) (remanding for ministerial correction of judgment of sentence).

Affirmed and remanded for the ministerial task of correcting the judgment of sentence.[3]

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle

---

[3] Because we affirm defendant's convictions and sentences, and are remanding solely for a ministerial correction of the judgment of sentence, we need not address defendant's argument that his case should be remanded before a different judge.