*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 17, 2019

Plaintiff-Appellee,

v

No. 340624
Oakland Circuit Court
LC No. 2016-259193-FH

CHANSE DAVID ALVEDY,

Defendant-Appellant.

Before: LETICA, P.J., and CAVANAGH and METER, JJ.

PER CURIAM.

Chanse David Alvedy appeals as of right his jury trial convictions of delivery of methamphetamine, MCL 333.7401(2)(b)(*i*), and possession of methamphetamine, MCL 333.7403(2)(b)(*i*). Alvedy was sentenced as a third-offense habitual offender, MCL 769.11, to 5 to 40 years in prison for the delivery conviction and 5 to 20 years in prison for the possession conviction. We affirm.

## I. BACKGROUND

This case arises from a drug transaction that occurred on June 13, 2016. Detective Matthew Goebel and Detective Kirk Walker both testified that they were members of a narcotics team that conducted surveillance at Alvedy's home. Detective Goebel watched the home from a parking lot approximately 200 feet away. While observing the house, Detective Goebel saw what he believed to be a hand-to-hand narcotics transaction between Alvedy and "Mr. Gadoua." Gadoua was pulled over shortly after the transaction, and he admitted that Alvedy had given him methamphetamine. As a result of this information, Detective Goebel obtained a search warrant for Alvedy's home. There, the detectives found methamphetamine in the room where they believed Alvedy resided. Detective Goebel testified that Alvedy admitted that he had sold Gadoua methamphetamine out of his "personal stash."

## II. SENTENCING

On appeal, Alvedy first argues that his Fifth Amendment rights were violated when the trial court improperly considered his refusal to admit guilt during the sentencing hearing. We disagree.

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011) (quotation marks and citation omitted). Alvedy did not object to the trial court's alleged consideration of his refusal to admit guilt at the time of sentencing. Therefore, the issue is not preserved.

Because Alvedy did not preserve this issue in the lower court, we review his claim for plain error. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). Under the plain error standard, the defendant must establish the following to avoid forfeiture: (1) an error occurred; (2) the error was plain, i.e., clear or obvious; and (3) and the plain error affected substantial rights. *Id*. at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "[O]nce a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse." *Id*. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425; 884 NW2d 297 (2015) (quotation marks and citation omitted).

Generally, "[i]f a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence." MCL 769.34(10). However, this Court has stated that MCL 769.34(10) does not "preclude relief for sentencing errors of constitutional magnitude." *People v Conley*, 270 Mich App 301, 316; 715 NW2d 377 (2006). "[A] defendant's Fifth Amendment right against self-incrimination is fulfilled only when a criminal defendant is guaranteed the right to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence." *Id*. at 314 (quotation marks and citations omitted; alteration in original). While a sentencing court can consider a lack of remorse when determining a defendant's potential for rehabilitation, "[a] sentencing court cannot base a sentence even in part on a defendant's refusal to admit guilt." *People v Dobek*, 274 Mich App 58, 104; 732 NW2d 546 (2007). This Court considers three factors when determining whether a sentencing court improperly considered a defendant's refusal to admit guilt: "(1) the defendant's maintenance of innocence after conviction; (2) the judge's attempt to get the defendant to admit guilt; and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe." *People v Payne*, 285 Mich App 181, 194; 774 NW2d 714 (2009) (quotation marks and citation omitted). If these three factors are indicated on the record, a reviewing court may find that the sentence was improperly influenced by the defendant's refusal to admit guilt. *People v Wesley*, 428 Mich 708, 713; 411 NW2d 159 (1987). "If, however, the record shows that the court did no more than address the factor of remorsefulness as it bore upon defendant's rehabilitation, then the court's reference to a defendant's persistent claim of innocence will not amount to error requiring reversal." *Id*.

At sentencing, Alvedy attempted to minimize his actions by comparing the quantity of methamphetamine discovered in his residence to the contents of a sugar packet, while also denying that the methamphetamine belonged to him. Alvedy insisted that he did not sell drugs, but gave them to Gadoua for free because the two were friends and regularly provided drugs to one another when in need. But as a result of Alvedy's continued protestations that he did not sell drugs, the trial court said, "I just would appreciate it, Mr. Alvedy, if you would have said yeah, I did it and give me my time . . . ." The trial court further stated that while it had considered sentencing below the guidelines range, Alvedy's allocution had convinced the court that he deserved the sentence recommended by the Department of Corrections.

Viewing the sentencing hearing as a whole, the trial court did not attempt to persuade Alvedy to admit his guilt or improperly consider his refusal to do so. When the court spoke to Alvedy regarding his failure to simply state that he "did it," Alvedy had already admitted without provocation that he provided drugs to Gadoua. Indeed, it appears that the trial court's frustration did not stem from Alvedy's refusal to admit guilt, but rather his attempts to excuse or diminish his actions. Viewed in context, the trial court appeared to be considering Alvedy's lack of remorse or inability to truly take responsibility for his actions as it bore upon his potential for rehabilitation. Consequently, Alvedy's Fifth Amendment rights were not violated and the trial court's comment did not amount to error requiring resentencing. *Id.*

### III. ENTRAPMENT

Alvedy next argues that his due process rights were violated when the police entrapped him. Again, we disagree.

Generally, "[w]hether entrapment occurred is determined by considering the facts of each case and is a question of law for this Court to review de novo." *People v Fyda*, 288 Mich App 446, 456; 793 NW2d 712 (2010). However, Alvedy failed to raise the issue of entrapment in the lower court, and our review is therefore limited to plain error. *Carines*, 460 Mich at 764; *Danto*, 294 Mich App at 605.

"Michigan has adopted a modified objective test when analyzing entrapment, looking primarily at police conduct but also requiring the court to consider 'the circumstances of the defendant to determine whether the police conduct would induce a similarly situated person, with an otherwise law-abiding disposition, to commit the charged crime.' " *People v Akhmedov*, 297 Mich App 745, 752-753; 825 NW2d 688 (2012) (quotation marks and citation omitted). "Entrapment occurs if (1) the police engage in impermissible conduct that would induce an otherwise law-abiding person to commit a crime in similar circumstances or (2) the police engage in conduct so reprehensible that the court cannot tolerate it." *Id.* at 753. "Reprehensible conduct alone, without police instigation, can constitute entrapment." *Fyda*, 288 Mich App at 456. "This Court must consider several factors in determining whether a defendant was impermissibly induced by the police to commit criminal activity . . . ." *Akhmedov*, 297 Mich App at 753. Those factors include:

(1) whether the police appealed to the defendant based on friendship; (2) whether the defendant had been known to commit the charged crime; (3) whether there was a time lapse between the investigation and the arrest; (4) whether there was

an inducement that would make the crime unusually attractive to a law-abiding citizen; (5) whether excessive consideration was offered to the defendant; (6) whether the police guaranteed that the acts were not illegal; (7) whether the government pressured the defendant to commit the crime; (8) whether sexual favors were offered to the defendant; (9) whether the defendant was threatened with arrest unless he or she complied; (10) whether the government acted to escalate the defendant's criminal culpability; (11) whether the police had control over the informant; and (12) whether the investigation targeted the defendant. [*Id*.]

"Entrapment will not be found where the police did nothing more than present the defendant with the opportunity to commit the crime of which he was convicted." *People v Milstead*, 250 Mich App 391, 397; 648 NW2d 648 (2002) (quotation marks and citation omitted).

On appeal, Alvedy claims that Detective Goebel communicated with him persistently, urging him to acquire and sell drugs. Alvedy additionally asserts that the police manufactured his criminal behavior by appealing to his desire to make friends, inspiring him to engage in conduct that was out of character, and escalating his criminal culpability. We disagree. Alvedy cites to his own affidavit as support for his claim of entrapment. However, Alvedy's affidavit does not corroborate the claims that he makes on appeal. The affidavit states only that Alvedy believed that the confidential informant referenced in a search warrant did not exist. Instead, Alvedy believed that the information attributed to the confidential informant was provided by Detective Goebel. Alvedy averred that at the time of his arrest, "Detective Goebel, the Affiant, stated to me that he was indeed the person who attempted to set up a meeting with me through social media." Alvedy further asserted that he "never agreed to sell him drugs through social media." Even assuming that the information in Alvedy's affidavit is true, it does not corroborate his claims on appeal. The affidavit does not state that Detective Goebel persistently encouraged Alvedy to sell drugs, nor does it state that Detective Goebel or any other police officer attempted to befriend him, encouraged him to engage in out-of-character activity, or escalated his culpability.

There is simply no record evidence that Alvedy was entrapped by the police. The record only establishes that Detective Goebel received information that resulted in surveillance of Alvedy's residence. After witnessing what Detective Goebel believed to be a narcotics transaction, Gadoua was questioned during a traffic stop and admitted that Alvedy gave him methamphetamine. Following Gadoua's admission, a search warrant was obtained, Alvedy's home was searched, and the search resulted in discovery of methamphetamine. Additionally, Detective Goebel testified that he had not met Gadoua prior to the incident, and the interaction between Alvedy and Gadoua was not a controlled buy. These circumstances do not amount to impermissible conduct that would induce an otherwise law-abiding citizen to commit a crime in similar circumstances or reflect conduct so reprehensible that the court cannot tolerate it. *Akhmedov*, 297 Mich App at 753. Thus, Alvedy has failed to establish that an error occurred.

## IV. PROSECUTORIAL ERROR[1]

Alvedy next argues that the prosecution argued facts not in evidence and improperly bolstered Detective Goebel's credibility. We disagree.

Generally, this Court reviews allegations of prosecutorial misconduct de novo. *People v Pfaffle*, 246 Mich App 282, 288; 632 NW2d 162 (2001). But because Alvedy did not object to the prosecution's alleged improper remarks in the trial court, we review only for plain error. *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008). Further, we will not "find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Jackson*, 313 Mich App at 425.

"A prosecutor is afforded great latitude regarding his or her arguments and conduct at trial." *Fyda*, 288 Mich App at 461. "[T]he propriety of a prosecutor's remarks will depend upon the particular facts of each case." *People v Callon*, 256 Mich App 312, 330; 662 NW2d 501 (2003). "[A] prosecutor's comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *Id*. Additionally, "[a]lthough a prosecutor may not argue facts not in evidence or mischaracterize the evidence presented, the prosecutor may argue reasonable inferences from the evidence." *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001). "The key test in evaluating claims of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *Id*. at 594.

Alvedy contends that the prosecutor argued facts that were not in evidence by referencing Alvedy's confession, without expressly making it clear that the only evidence of the alleged confession was Detective Goebel's testimony. We disagree. The prosecutor's remarks were focused on the credibility of Detective Goebel's testimony regarding what he saw and what Alvedy told him. The prosecutor made reference to Detective Goebel's recollection of Alvedy's statements on more than one occasion throughout her closing argument, stating at one point that Detective Goebel had "no reason to come in here and lie to you about what the defendant said." It was clear that the prosecutor was referencing testimony by Detective Goebel rather than improperly implying that Alvedy had acknowledged the admission. Additionally, the jury saw the evidence and heard the witnesses' testimony firsthand, so it was fully aware that Alvedy did not testify or make any admissions at trial. Furthermore, the jury was properly instructed that before it could consider an out-of-court statement by Alvedy, it must first find that Alvedy actually made the statement.

Alvedy also argues that the prosecutor improperly bolstered Detective Goebel's credibility by suggesting to the jury that his testimony was exceptionally reliable. "[T]he prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness's truthfulness." *People v Bahoda*, 448 Mich 261, 276; 531

---

[1] We acknowledge that the term "prosecutorial error" is a more apt description for most claims of error involving the prosecutor's conduct. *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). We employ the term "prosecutorial misconduct" in this opinion as a term of art.

NW2d 659 (1995). However, "a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). Here, considered in context, the prosecutor was commenting on Detective Goebel's credibility because Detective Goebel was the primary witness in the case. He personally observed the interaction between Alvedy and Gadoua, and he personally spoke with Alvedy after the search warrant was executed. The prosecutor stated that Detective Goebel was reliable not only because of his demeanor and the fact that his testimony corroborated the physical evidence, but also because he had "no dog in the fight," and, therefore, no reason to lie to the jury. Additionally, the prosecutor was addressing defense counsel's attempts at discrediting Detective Goebel. Especially considering the responsive nature of the prosecutor's remarks, the statements were not improper. *Callon*, 256 Mich App at 330 (stating that a prosecutor's statements must be "evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial").

In any event, the trial court instructed the jury that the attorneys' statements and arguments were not evidence and explained the jury's role of determining the facts of the case and assessing witness credibility. Finally, any prejudice that may have resulted from the prosecutor's statements could have been mitigated by a more specific curative instruction had Alvedy given a timely objection. Accordingly, he is not entitled to appellate relief. *Jackson*, 313 Mich App at 425.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Lastly, Alvedy argues that he was deprived the effective assistance of counsel because trial counsel failed to object to the presence of the jury when the prosecutor referenced a screenshot of incriminating text messages. Again, we disagree.

"A claim of ineffective assistance of counsel is a mixed question of law and fact." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id*. However, Alvedy failed to preserve the issue by moving for either a new trial or a *Ginther*[2] hearing in the trial court. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). "Where claims of ineffective assistance of counsel have not been preserved, our review is limited to errors apparent on the record." *Id*. (quotation marks and citation omitted).

In order to prevail on a claim of ineffective assistance of counsel, a defendant has the burden of establishing that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

(2012) (quotation marks and citation omitted). There is also a "strong presumption that counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52. Further, we will not fault trial counsel "for failing to raise an objection or motion that would have been futile." *People v Fonville*, 291 Mich App 363, 384; 804 NW2d 878 (2011) (quotation marks and citation omitted).

Alvedy argues that trial counsel erred by failing to object to the jury's presence during a discussion that transpired between defense counsel, the prosecutor, and the court with respect to the admission of incriminating text messages. During its case-in-chief, the prosecutor began to question Detective Goebel about a screenshot he had taken from Gadoua's phone. Detective Goebel testified that Alvedy and Gadoua exchanged text messages shortly before the interaction he witnessed between the two men in front of Alvedy's house. Defense counsel objected to the admission of the screenshot based on a lack of foundation and hearsay. The trial court reviewed the messages at issue and sustained defense counsel's objection. Importantly, the jury did not hear the substance of the text messages despite its presence during this exchange. The jury heard only that Detective Goebel had taken a screenshot of a text message conversion between Gadoua and Alvedy that occurred before Gadoua and Alvedy met in front of the house.

Alvedy's argument that trial counsel's conduct fell below an objective standard of reasonableness is unpersuasive. Trial counsel made a timely objection to admission of the text messages. Then, when the arguments concerning the admissibility of the messages continued, trial counsel asked to approach the bench. We will not construe counsel's performance as objectively unreasonable simply because she did not ask to approach the bench or have the jury sequestered instantly after objecting, particularly when the objection did not require the attorneys to verbally describe the content of the messages.

Moreover, even if Alvedy was able to meet his burden of showing that trial counsel's performance fell below an objectively reasonable standard, Alvedy must still establish that, but for the deficient performance, there is a reasonable probability that the outcome would have been different. See *Trakhtenberg*, 493 Mich at 51. Alvedy argues that trial counsel's failure to object to the presence of the jury during the text message conversation prejudiced him because the jury was allowed to hear references to incriminating text messages, which likely affected the outcome of the trial because the jury did not hear testimony from either Gadoua or Alvedy. We disagree. The substance of the text messages was never introduced, and it is improbable that the outcome of the trial was impacted by the mere fact that Gadoua and Alvedy communicated before the drug transaction. There was plenty of evidence on the record as both Detective Goebel and Detective Walker testified about the incident and the physical evidence found. Alvedy has not demonstrated prejudice arising from trial counsel's performance.

Affirmed.

/s/ Anica Letica
/s/ Mark J. Cavanagh
/s/ Patrick M. Meter

-7-