PEOPLE v AKHMEDOV

Docket Nos. 303129 and 305625. Submitted July 17, 2012, at Lansing. Decided July 26, 2012. Approved for publication September 11, 2012, at 9:05 a.m. Leave to appeal denied, 493 Mich 920.

Davrush Akhmedov was found guilty by a jury in the Ingham Circuit Court of two counts of delivery of less than 50 grams of a controlled substance, MCL 333.7401(2)(a)(*iv*), and one count of delivery of 50 grams or more but less than 449 grams of a controlled substance, MCL 333.7401(2)(a)(*iii*). Defendant is a lawful United States' resident alien. Defendant arranged drug sales to undercover police officers after being introduced to them by his friend Mahmoud Elbast, a police informant. Defendant moved to dismiss the charges, arguing that he had been entrapped. The court, Joyce Draganchuk, J., denied the motion. Following his convictions, defendant was sentenced to 363 days in jail with 36 months' probation. The court departed downward from the sentencing guideline's range, concluding that there were substantial and compelling reasons to justify the departure because a sentence within the range would have resulted in defendant's automatic deportation without a prior cancellation of deportation hearing. The prosecution appealed the judgment of sentence (Docket No. 303129), defendant appealed his convictions (Docket No. 305625), and the Court of Appeals ordered the cases consolidated.

The Court of Appeals *held*:

1. A trial court must articulate substantial and compelling reasons on the record when imposing a sentence that is a departure from the guideline's recommended range. A departure is appropriate if the trial court believes the sentencing range is disproportionate to the seriousness of the defendant's conduct and to the defendant in light of his criminal record. To deviate from the sentencing guidelines, the trial court must articulate substantial and compelling reasons that are objective and verifiable, keenly grab the court's attention, and are of considerable worth in deciding the terms of the sentence. Substantial and compelling reasons only exist in exceptional cases. Under 8 USC 1227(a)(2)(A)(*iii*) and 8 USC 1227(a)(2)(B)(*i*), an alien in and admitted to the United States shall be removed if the alien has

been convicted of certain crimes, including aggravated felonies and controlled substance violations. While a resident alien may apply for cancellation of his or her deportable status, such relief is only available if the alien has not been convicted of an aggravated felony. 8 USC 1229b(a). A state law controlled substance violation constitutes an aggravated felony for purposes of immigration law when the state law conviction could be punishable as a felony under the federal controlled substances act, 21 USC 801 *et seq*. Unless otherwise specified in a statute, a felony is a crime for which the maximum term of imprisonment authorized is more than one year. 8 USC 3559(a) clearly provides that the maximum term authorized refers to the maximum possible sentence contained in the statute, not to the maximum contained in the sentencing guidelines range or the actual sentence imposed by the trial court. The trial court abused its discretion by departing from the guidelines when imposing defendant's sentences. The court's stated departure reason—to protect defendant's ability to seek cancellation of deportation proceedings by keeping the sentence below one year—was premised on a misinterpretation of federal law. The length of the sentence imposed had no bearing on whether the conviction offenses were aggravated felonies for purposes of immigration law; rather the analysis was dependent on the maximum prison term authorized under the statutes for which he was convicted, MCL 333.7401(2)(a)(*iv*) and MCL 333.7401(2)(a)(*iii*). Accordingly, the trial court did not have substantial and compelling reasons to depart from the guidelines.

2. The entrapment defense is meant to deter abuse of authority by precluding criminal liability for acts that were instigated by the police and committed by those not predisposed to such acts. Entrapment occurs if the police engage in impermissible conduct that would induce an otherwise law-abiding person to commit a crime in similar circumstances or the police engage in conduct so reprehensible that the court cannot tolerate it. Because a defendant may prove police entrapment solely through reprehensible conduct, police instigation is not a prerequisite to a claim of entrapment. Reprehensible conduct by an informant may be attributed to the police if a sufficient agency relationship exists between the informant and the police. However there is no entrapment when the police do not become involved with the informant until after the criminal transaction is complete. The trial court did not err by denying defendant's motion to dismiss

the charges on the basis of entrapment. While Mahmoud Elbast was a paid informant for the first transaction, the agency relationship did not exist at the time he groomed defendant during the weeks prior to the drug sales. Thus, Elbast's misconduct could not be attributed to the police because they had no control over him when he committed the acts. Defendant was also not induced by the police to commit the two additional drug transactions. The court's finding that Elbast was not an agent of the police for the two remaining transactions was not clearly erroneous because Elbast had no contact with the police after the first transaction. The police did not induce defendant to commit the crimes or engage in reprehensible behavior that would justify a finding of entrapment. Finally defendant initiated the final drug sale by contacting the undercover police officer and offering to provide larger quantities of cocaine. At that point the police merely gave defendant the opportunity to commit a crime, a circumstance which is insufficient to establish the entrapment defense,

Convictions affirmed, sentence vacated, and case remanded for resentencing.

IMMIGRATION LAW — DEPORTATION AND REMOVAL — GROUNDS — CRIMINAL ACTIVITY — AGGRAVATED FELONIES — CONTROLLED SUBSTANCE VIOLATIONS.

Under 8 USC 1227(a)(2)(A)(iii) and 8 USC 1227(a)(2)(B)(i), an alien in and admitted to the United States shall be removed if the alien has been convicted of certain crimes, including aggravated felonies and controlled substance violations; while a resident alien may apply for cancellation of his or her deportable status, such relief is only available if the alien has not been convicted of an aggravated felony; 8 USC 1229b(a); a state-law controlled substance violation constitutes an aggravated felony for purposes of immigration law when the state law conviction could be punishable as a felony under the federal controlled substances act, 21 USC 801 *et seq.*; unless otherwise specified in a statute, a felony is a crime for which the maximum term of imprisonment authorized is more than one year; 8 USC 3559(a) clearly provides that the maximum term authorized refers to the maximum possible sentence contained in the statute, not to the maximum contained in the sentencing guidelines range or the actual sentence imposed by the trial court.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Stuart J. Dunnings, III*, Prosecuting Attorney, and *Joseph B. Finnerty*, Appellate Division Chief, for the people.

State Appellate Defender (by *Desiree M. Ferguson*) for defendant.

Before: Stephens, P.J., and Sawyer and Owens, JJ.

Per Curiam. In these consolidated appeals, in Docket No. 305625, defendant appeals his convictions by a jury of two counts of delivery of less than 50 grams of a controlled substance, in violation of MCL 333.7401(2)(a)(*iv*) and one count of delivery of 50 grams or more but less than 449 grams of a controlled substance, in violation of MCL 333.7401(2)(a)(*iii*). In Docket No. 303129, the prosecutor appeals the judgment of sentence, which was a downward departure from the sentencing guidelines. We affirm defendant's convictions, but vacate the judgment of sentence and remand for resentencing.

### I. BACKGROUND

Defendant is a lawful resident alien of Turkish heritage who moved to the United States from Russia to flee ethnic persecution. Although the sentencing guidelines recommended a prison term of 51 to 85 months, the trial court departed downward from the guidelines and sentenced defendant to 363 days in jail with 36 months probation. The court found that defendant would have been automatically deported without a cancellation of deportation hearing if he was sentenced to more than 363 days in jail for his crimes.

Defendant testified that he had a difficult time making friends because he could not speak English, but he was able to befriend Mahmoud Elbast, aka "Moe", who was a police informant who arranged drug sales to undercover police officers. Defendant reported that Moe was a close friend. He claimed that Moe told him that they could go to parties and meet girls for sex if he had

drugs. Moe called defendant daily to pressure him into locating a drug supplier. Defendant reported that after he agreed to locate a drug supplier and deal drugs, Moe set him up to deal drugs to undercover police officers. Defendant's convictions were the result of three separate drug deals with the undercover police officers.

## II. SENTENCING DEPARTURE

The prosecutor argues that the trial court erroneously departed downward from the sentencing guidelines because the court's stated reason was not a substantial and compelling reason sufficient to justify the court's departure. We agree.

A sentence imposed within the sentencing range will be affirmed by this Court; however, a trial court must articulate substantial and compelling reasons on the record when departing from the guidelines if the court believes the sentencing range is "[dis]proportionate to the seriousness of the defendant's conduct and to the defendant in light of his criminal record." *People v Babcock*, 469 Mich 247, 255-256, 262; 666 NW2d 231 (2003); see also MCL 769.34(3).

> [T]he existence or nonexistence of a particular factor is a factual determination for the sentencing court to determine, and should therefore be reviewed by an appellate court for clear error. The determination that a particular factor is objective and verifiable should be reviewed by the appellate court as a matter of law. A trial court's determination that the objective and verifiable factors present in a particular case constitute substantial and compelling reasons to depart from the statutory minimum sentence shall be reviewed for abuse of discretion. [*Babcock*, 469 Mich at 264-265 (quotations marks and citations omitted).]

The sentencing court must explain why its chosen sentence "is proportionate to the seriousness of the

defendant's conduct and his criminal history because, if it is not, the trial court's departure is necessarily not justified by a substantial and compelling reason." *Id.* at 264; see also *People v Smith*, 482 Mich 292, 301; 754 NW2d 284 (2008) (discussing facts present in the case that justified the trial court's departure from the recommended minimum sentence range).

To deviate from the sentencing guidelines, the trial court must articulate substantial and compelling reasons that (1) are objective and verifiable, (2) keenly grab the court's attention, and (3) are of considerable worth in deciding the terms of the sentence. *Babcock*, 469 Mich at 257. Substantial and compelling reasons justifying a departure exist only in exceptional cases. *Id.*

Here, the trial court explicitly stated that its sole reason for departing from the guidelines was to protect defendant's ability to seek cancellation of deportation proceedings, which would have resulted in both permanent exile from this country and permanent separation from his immediate and extended family.[1] We agree with the prosecutor that the trial court lacked substantial and compelling reasons to depart from the guidelines because the court's stated reason was premised on a misinterpretation of federal law. 8 USC 1227(a) provides that "[a]ny alien . . . in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens." An alien is deportable if he or she is convicted of certain crimes, including aggravated felonies and controlled substance violations (excluding a single offense for possession of less than 30 grams of marijuana). 8 USC

---

[1] Although defendant presents other reasons on appeal to depart from the guidelines, the trial court did not rely upon these reasons in making its departure.

1227(a)(2)(A)(iii); 8 USC 1227(a)(2)(B)(i). While a resident alien may apply for cancellation of his or her deportable status, the alien is only eligible for such relief if the alien has not been convicted of an "aggravated felony." 8 USC 1229b(a). A state law controlled substance violation only constitutes an "aggravated felony" for purposes of immigration law when the state law conviction could be punishable as a felony under the federal Controlled Substances Act, 21 USC 801 *et seq.* *Lopez v Gonzales*, 549 US 47, 52-53, 60; 127 S Ct 625, 166 L Ed 2d 462 (2006). "A felony is a crime for which the 'maximum term of imprisonment authorized' is 'more than one year,' " unless otherwise specified in the statute. *Carachuri-Rosendo v Holder*, 560 US __; 130 S Ct 2577, 2581; 177 L Ed 2d 68 (2010), quoting 18 USC 3559(a).

The trial court interpreted the phrase in 18 USC 3559(a), "maximum term of imprisonment authorized," as applying to the particular sentencing terms imposed by the trial court. The court mistakenly reasoned that defendant's conviction would not qualify as a felony under federal law if defendant were sentenced to less than one year in prison for his crimes. This interpretation runs contrary to the clear statutory language of 18 USC 3559(a). The " 'maximum' term of imprisonment authorized' " refers to the maximum possible sentence contained in the statute, not the maximum contained in the sentencing guidelines range or the actual sentence imposed by the trial court. *United States v Rodriquez*, 553 US 377, 391-392; 128 S Ct 1783; 170 L Ed 2d 719 (2008). The trial court's decision to depart from the guidelines actually had no effect on whether defendant's conviction would qualify as an "aggravated felony" under federal immigration law. Therefore, the trial court did not have substantial and compelling reasons for making

the downward departure. Accordingly, this Court vacates defendant's judgment of sentence and remands for resentencing.

### III. ENTRAPMENT

Defendant argues that the trial court erred by denying his motion to dismiss because the record established that he was entrapped into committing the three drug crimes. We disagree. This Court has adopted the following standard of review when evaluating a claim of entrapment:

> Whether entrapment occurred is determined by considering the facts of each case and is a question of law for this Court to decide de novo. The trial court must make specific findings regarding entrapment, and this Court reviews its findings under the clearly erroneous standard. The findings are clearly erroneous if this Court is left with a firm conviction that a mistake was made. [*People v Fyda*, 288 Mich App 446, 456; 793 NW2d 712 (2010) (citations omitted).]

Entrapment is a criminal defense, and the defendant bears the burden of establishing entrapment by a preponderance of evidence. *People v Johnson*, 466 Mich 491, 498; 647 NW2d 480 (2002). The purpose of this defense is to deter abuse of authority by precluding criminal liability for acts that were instigated by the police and committed by those not predisposed to such acts. *People v Juillet*, 439 Mich 34, 52; 475 NW2d 786 (1991). However, the police do not engage in entrapment merely by providing a defendant with the opportunity to commit a crime or by assisting an ongoing criminal conspiracy. *Id.* at 52-53. Michigan has adopted a modified objective test when analyzing entrapment, looking primarily at police conduct but also requiring the court to consider "the circumstances of the defen-

dant to determine whether the police conduct would induce a similarly situated person, with an otherwise law-abiding disposition, to commit the charged crime." *Id.* at 55. This includes consideration of any potential vulnerabilities of the defendant that the police may have exploited to induce the criminal acts. *Id.*

"Entrapment occurs if (1) the police engage in impermissible conduct that would induce an otherwise law-abiding person to commit a crime in similar circumstances or (2) the police engage in conduct so reprehensible that the court cannot tolerate it." *Fyda,* 288 Mich App at 456. This Court must consider several factors in determining whether a defendant was impermissibly induced by the police to commit criminal activity, including (1) whether the police appealed to the defendant based on friendship, (2) whether the defendant had been known to commit the charged crime, (3) whether there was a time lapse between the investigation and the arrest, (4) whether there was an inducement that would make the crime unusually attractive to a law-abiding citizen, (5) whether excessive consideration was offered to the defendant, (6) whether the police guaranteed that the acts were not illegal, (7) whether the government pressured the defendant to commit the crime, (8) whether sexual favors were offered to the defendant, (9) whether the defendant was threatened with arrest unless he or she complied, (10) whether the government acted to escalate the defendant's criminal culpability, (11) whether the police had control over the informant, and (12) whether the investigation targeted the defendant. *Johnson,* 466 Mich at 498-499. Even if the police initially entrapped a defendant into committing a crime, "[i]nitial entrapment does not immunize a defendant from criminal liability for subsequent transactions that he readily and willingly undertook." *Id.* at 505.

Because a defendant may prove police entrapment solely through reprehensible conduct, police instigation is not a prerequisite to a claim of entrapment. *Fyda*, 288 Mich App at 456. Reprehensible conduct by an informant may be attributed to the police if a sufficient agency relationship exists between the informant and the police. *Juillet*, 439 Mich at 69. However, police do not commit entrapment when they do not become involved with the informant until after the criminal transaction is complete. *People v LaPlaunt*, 217 Mich App 733, 737-738; 552 NW2d 692 (1996).

We evaluate each of the three transactions separately to determine whether defendant was entrapped by police. Regarding the first transaction, we find that the record sufficiently establishes that defendant was not entrapped by the police. The court found that Moe was a paid informant for the first transaction. Moe's prior coaching of defendant may not be attributed to the police because the police only became involved with Moe on the same day of the first transaction. The purpose of the entrapment defense is to deter police misconduct, not the misconduct of uninvolved third parties. The agency relationship between Moe and the police did not exist at the time Moe groomed defendant during the weeks prior to the drug sales. Thus, Moe's misconduct could not be attributed to the police, because they had no control over him when he committed his reprehensible acts. Aside from Moe's misbehavior, defendant presented no other evidence that he had been entrapped by the police during this first transaction. Accordingly, the trial court correctly concluded that defendant failed to prove entrapment by a preponderance of evidence.

The record also establishes that defendant was not entrapped by the police during the second transaction.

In light of the fact that Moe and the police had no further contact after the first transaction, the trial court's finding that Moe was not an agent of the police for the second and third transactions was not clearly erroneous. Moe's repetitive appeals to defendant's friendship during the second and third transactions occurred after Moe ceased acting as a police informant. Looking solely to the conduct of the police, it is clear that female undercover officer Jill Kraczon gave no indication to defendant that she was going to start a personal or sexual relationship with him. Kraczon specifically refused to drive around with him, did not flirt with him, and only briefly spoke with him for less than three minutes during this transaction. Her phone calls and text messages only pertained to arranging the drug transactions. She gave him no indication that she would invite him to parties or introduce him to other women who would have sex with him. The police neither induced defendant into committing the crimes, nor engaged in reprehensible behavior that would justify a finding of entrapment. Accordingly, defendant failed to establish by a preponderance of evidence that he was entrapped into committing the second offense.

Likewise, defendant was not induced to commit the third transaction, and the police did not commit any reprehensible conduct. For this transaction, defendant initiated the drug sale by contacting Kraczon and offering to provide larger quantities of cocaine. Accordingly, defendant was not pressured or coerced into either selling drugs or escalating the amounts sold. Defendant's acts to conceal the drugs, change sale locations, and flee from the police all evince knowledge and awareness of the criminality of his actions. By this time, the police were clearly aware of defendant's drug-dealing activities, and their investigation was reasonably directed at these activities. In these circum-

stances, the police merely gave defendant the opportunity to commit a crime, which is insufficient to establish the entrapment defense. Therefore, the trial court did not err by refusing to dismiss this charge on the grounds of entrapment.

Affirmed as to defendant's convictions, but the sentence is vacated and remanded for resentencing.

STEPHENS, P.J., and SAWYER and OWENS, JJ., concurred.