*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DAVID TRAMELL WALKER,

      Defendant-Appellant.

UNPUBLISHED
March 4, 2021

Nos. 351751; 351752
Macomb Circuit Court
LC Nos. 2019-001499-FH;
        2019-001495-FH

Before: K.F. KELLY, P.J., and STEPHENS and CAMERON, JJ.

PER CURIAM.

Defendant, David Tramell Walker, appeals his jury trial convictions of delivery of less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(*v*), and fourth-degree fleeing and eluding a police officer, MCL 257.602a(2), in Docket No. 351751, and delivery of less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), and maintaining a drug vehicle, MCL 333.7405(1)(d), in Docket No. 351752. Walker was sentenced to 365 days in jail and to two years of probation. We affirm Walker's convictions and sentences but remand for further proceedings consistent with this opinion.

## I. BACKGROUND

In April 2019, a confidential informant introduced Walker to Detective Bridget Lines, who worked in the Special Investigation Division of the Roseville Police Department. On April 15, 2019, Detective Lines purchased crack cocaine from Walker. On April 18, 2019, Detective Lines text messaged Walker and asked to buy $40 worth of crack cocaine. Walker agreed. Although they originally agreed to meet at a mall in Macomb County, Walker later changed the location of the meeting to a Texas Roadhouse parking lot in Roseville. The transaction was completed shortly thereafter. Walker was not arrested at that time. On April 22, 2019, Detective Lines again sent Walker a text message, asking to buy $40 worth of crack cocaine. Walker again agreed. Although they originally agreed to meet at a Walmart, Walker later told Detective Lines to meet him in the parking lot of a Days Inn in Roseville. Detective Lines complied, completed the transaction, and left the scene. Sergeant Jason Otto, Detective Michael Saier, and Detective Joseph Trombley continued to surveil Walker, who got into his vehicle and left the Days Inn.

The surveillance team saw Walker commit a traffic violation. Officer Samantha Pelt, who was on patrol at the time, was instructed to conduct a traffic stop of Walker's vehicle. Although Officer Pelt got behind Walker's vehicle and activated her vehicle's lights and sirens, Walker did not pull his vehicle over. Instead, Walker sped up and "began to weave in and out of" traffic, which was heavy at the time, in order to "evade" Officer Pelt. Walker later drove through a construction zone. Sergeant Otto instructed Officer Pelt to stop pursuing Walker because it was a safety hazard for Officer Pelt and for other drivers and pedestrians.

Soon thereafter, Walker was located by law enforcement, and other members of law enforcement traveled to that location. Once there, Detective Saier observed Walker exit his vehicle, jump a fence, and run through a cemetery. Walker was ultimately arrested by Sergeant Otto and Detective Trombley. Shortly before Walker was arrested, Detective Saier saw Walker drop a bag onto the ground. The substance in that bag, as well as the substances that Walker sold to Detective Lines, contained cocaine. Sergeant Otto testified that the amount of cocaine that was contained in the bag was not consistent with personal use; rather, Sergeant Otto opined that Walker intended to sell it.

Sergeant Otto led searches of two hotel rooms in the Thirteen Mile Road and Gratiot Road area where Walker had been staying.[1] The police recovered two swords, a large knife, two cell phones, sandwich bags, and a digital scale. They also recovered $6,000 in cash from a backpack in Walker's vehicle and more than $300 in cash from Walker's person, including the $40 in prerecorded bills that Detective Lines had given Walker on April 22, 2019. In a postarrest interrogation, Walker told Sergeant Otto that he sold about two ounces of crack cocaine per week.

With respect to the April 15, 2019 transaction, Walker was charged with delivery of less than 50 grams of cocaine. With respect to the April 18, 2019 and April 22, 2019 transactions, Walker was charged with two counts of delivery of less than 50 grams of cocaine, one count of possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(iv), one count of fourth-degree fleeing and eluding a police officer, and one count of maintaining a drug vehicle.

Prior to trial, Walker moved to dismiss the charges on the ground of entrapment and for production of the confidential informant. On the day that trial was scheduled to commence, the trial court held a hearing on the motions. At the beginning of the hearing, the prosecutor indicated that she was dismissing the case regarding the transaction that occurred on April 15, 2019. Because the April 15, 2019 transaction was the only transaction that the confidential informant was involved in and because the trial court found that the confidential informant's testimony was not relevant to the remaining charges, the trial court denied Walker's motion to produce the confidential informant. The trial court then moved on to Walker's motion to dismiss based on entrapment. After hearing the testimony of Detective Lines and Sergeant Otto and reviewing the

---

[1] The April 18, 2019 and April 22, 2019 transactions both occurred near 13 Mile Road and Gratiot Road.

text messages that were exchanged between Detective Lines and Walker, the trial court denied Walker's motion to dismiss the remaining charges. The trial court stated as follows:

> Even though Detective Line[s] indicated she made first contact, there does appear to be some prompting of [Walker's] own in some of the texts. He's the one who ultimately picked the locations or changed them from where they were suggested by the detective.

> I don't think there's anything to suggest that the behavior is so reprehensible or that it caused [Walker] to do anything he was otherwise unwilling to do. So, I'm going to deny defense's motion on entrapment.

Trial then commenced. Detective Lines, Sergeant Otto, Detective Saier, Detective Trombley, and a representative from the Michigan Forensic Laboratory testified for the prosecution. Walker testified on his own behalf. The jury did not hear evidence concerning the April 15, 2019 transaction. Walker was convicted of all the charged crimes, except for possession with intent to deliver cocaine as to the bag he dropped upon arrest. Walker was instead convicted of possession of less than 25 grams of cocaine. Walker was sentenced as described above, and these appeals followed.[2]

## II. ANALYSIS

### A. ENTRAPMENT

Walker argues that the trial court erred by denying his motion to dismiss based on his argument that he was entrapped. We disagree.

"Whether entrapment occurred is determined by considering the facts of each case and is a question of law for this Court to decide de novo." *People v Fyda*, 288 Mich App 446, 456; 793 NW2d 712 (2010). "The trial court must make specific findings regarding entrapment, and this Court reviews its findings" for clear error. *Id*. "The findings are clearly erroneous if this Court is left with a firm conviction that a mistake was made." *Id*.

The "[d]efendant ha[s] the burden of proving by a preponderance of the evidence that he was entrapped." *People v Vansickle*, 303 Mich App 111, 115; 842 NW2d 289 (2013). "Entrapment is not a defense that negates an essential element of the charged crime. Instead, it presents facts that are collateral to the crime and that justify barring the defendant's prosecution." *People v Jones*, 203 Mich App 384, 386; 513 NW2d 175 (1994). Thus, "[t]he defendant's guilt or innocence is irrelevant." *People v Forrest*, 159 Mich App 329, 334; 406 NW2d 290 (1987) (quotation marks and citations omitted). "Michigan courts use the objective test of entrapment. The objective test focuses on the propriety of the government's conduct that resulted in the charges

---

[2] On January 7, 2020, this Court consolidated the two appeals. *People v Walker*, unpublished order of the Court of Appeals, entered January 7, 2020 (Docket Nos. 351751 and 351752).

against the defendant rather than on the defendant's predisposition to commit the crime." *People v Hampton*, 237 Mich App 143, 156; 603 NW2d 270 (1999).

> Entrapment occurs if (1) the police engage in impermissible conduct that would induce an otherwise law-abiding person to commit a crime in similar circumstances or (2) the police engage in conduct so reprehensible that the court cannot tolerate it. [*Vansickle*, 303 Mich App at 115 (quotation marks and citations omitted).]

The mere furnishing of an opportunity to commit a crime is not entrapment. *People v Akhmedov*, 297 Mich App 745, 752; 825 NW2d 688 (2012). This Court considers several factors under the inducement prong of the entrapment test:

> (1) whether the police appealed to the defendant based on friendship, (2) whether the defendant had been known to commit the charged crime, (3) whether there was a time lapse between the investigation and the arrest, (4) whether there was an inducement that would make the crime unusually attractive to a law-abiding citizen, (5) whether excessive consideration was offered to the defendant, (6) whether the police guaranteed that the acts were not illegal, (7) whether the government pressured the defendant to commit the crime, (8) whether sexual favors were offered to the defendant, (9) whether the defendant was threatened with arrest unless he or she complied, (10) whether the government acted to escalate the defendant's criminal culpability, (11) whether the police had control over the informant, and (12) whether the investigation targeted the defendant. [*Akhmedov*, 297 Mich App at 753.]

In these cases, there is no evidence that Detective Lines established and exploited a relationship with Walker or that she targeted any other vulnerability in a way that induced Walker to commit an offense that he was not already prepared to commit. Although Detective Lines initiated communication with Walker before each undercover drug buy, she did so in a transactional, unemotional fashion. Her short communications with Walker concerned the time and place of the drug transactions and nothing more. Each time, Walker moved the meeting to a location that he preferred and conducted the transaction in a swift, business-like fashion. Indeed, $40 was exchanged for the crack cocaine without further discussion. Although Walker was not arrested after the April 18, 2019 transaction, Detective Lines did not pressure Walker to sell her a larger amount of crack cocaine in the April 22, 2019 transaction. Furthermore, only one week elapsed between Detective Lines's first contact with Walker and his arrest.

Detective Lines did not offer Walker sexual favors or an exorbitant amount of money, and there is no evidence that he showed a reluctance to participate. Detective Lines testified that Walker did not exhibit any signs of discomfort during either transaction, and the record evidence supports that Walker was an experienced narcotics dealer who understood that he controlled the circumstances of the transactions. Indeed, during the April 18, 2019 transaction, Walker placed the crack cocaine on his lap near his penis instead of handing it to Detective Lines. While law enforcement was aware that Walker had sold narcotics in the past, there is no reason to believe that Walker was induced to do something he otherwise would not have done by Detective Lines's phone calls and text messages or the prospect of obtaining $40. In other words, Detective Lines

presented Walker with nothing more than the opportunity to commit the crimes. See *Akhmedov*, 297 Mich App at 752.

However, even when a defendant cannot establish improper inducement under the first prong of the entrapment test, he "may prove police entrapment solely through reprehensible conduct[.]" *Id*. at 754. Reprehensible conduct entrapment occurs when the police "commit certain criminal, dangerous, or immoral acts." *People v Connolly*, 232 Mich App 425, 429; 591 NW2d 340 (1998) (quotation marks and citation omitted). "[U]ndercover drug sales conducted by the police do not constitute entrapment per se." *Id*. at 429. "Reprehensible conduct by an informant may be attributed to the police if a sufficient agency relationship exists between the informant and the police." *Akhmedov*, 297 Mich App at 754.

We conclude that there was nothing morally reprehensible or unlawful about Detective Lines's conduct in these cases. While Walker is correct that Detective Lines lied when she told Walker that she was not a police officer, Walker cites no authority for the proposition that an undercover officer acts reprehensibly if she does not reveal her identity as a police officer to a suspect. Furthermore, although Walker refers to the actions of law enforcement in connection with the confidential informant, the prosecutor dismissed the case relating to the April 15, 2019 transaction. Walker was convicted on the basis of the transactions that occurred *after* the confidential informant introduced Walker to Detective Lines. Even reprehensible conduct by law enforcement, which we do not find this conduct to be, "will not support a finding of entrapment unless it induced or instigated the crime [or crimes] at issue." *People v Crawford*, 143 Mich App 348, 353; 372 NW2d 550 (1985). See also *Akhmedov*, 297 Mich App at 753 ("[i]nitial entrapment does not immunize a defendant from criminal liability for subsequent transactions that he readily and willingly undertook.") (quotation marks and citation omitted; alteration in original). As already explained above, there is no evidence that Walker was induced to commit the crimes at issue. Indeed, he controlled the circumstances of the April 18 and April 22, 2019 transactions, and there is no evidence that the confidential informant was involved beyond introducing Detective Lines and Walker on April 15, 2019. Rather, after the introduction, Detective Lines communicated with Walker on her own. Consequently, we conclude that the trial court did not err by denying Walker's motion to dismiss based on entrapment.

## B. RIGHT TO CONFRONTATION

Walker argues in a cursory manner that his constitutional right to confrontation was violated because he was unable to question the confidential informant at the entrapment hearing.[3] We disagree. The prosecutor did not offer the confidential informant's testimony against Walker at the entrapment hearing. Rather, the prosecutor dismissed the charge related to the only

---

[3] Walker also argues that "[t]he trial court's denial of [Walker's] motion to subpoena the confidential informant for trial denied [Walker the] right to confrontation of the witnesses against him and to question the reliability of the confidential informant." In so arguing, however, Walker fails to explain or rationalize his argument in a meaningful manner. Consequently, Walker's argument that his right to confrontation was violated because he was unable to question the confidential informant at trial is abandoned. See *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001).

transaction in which the confidential informant was involved. Therefore, because there were no testimonial statements made by the confidential informant offered against Walker at the entrapment hearing, Walker did not have a right to confront the confidential informant at the hearing. Cf. *People v Sammons*, 191 Mich App 351, 361-366; 478 NW2d 901 (1991).

## C. SHACKLES

Walker argues that he was denied a fair trial and due process because he was placed in foot shackles during trial. "We review issues of constitutional law de novo," *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011), and "[w]e review a trial court's decision to shackle a defendant for an abuse of discretion under the totality of the circumstances," *People v Payne*, 285 Mich App 181, 186; 774 NW2d 714 (2009). "A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008).

"Included within the right to a fair trial, absent extraordinary circumstances, is the right to be free of shackles or handcuffs in the courtroom." *Payne*, 285 Mich App at 186. Although "this right is not absolute, a defendant may be shackled only on a finding supported by record evidence that this is necessary to prevent escape, injury to persons in the courtroom or to maintain order." *Id*. (quotation marks and citation omitted).

On the second day of trial, before the jury was brought into the courtroom, defense counsel noted that Walker's legs were shackled even though they had not been shackled on the first day of trial. Defense counsel asked that the shackles be removed. Although defense counsel admitted that the jury could not "technically see the shackles," she argued that the jury might hear them. Defense counsel further argued that the shackles affected Walker's "movement" and "his ability to talk to [counsel] and help [counsel] with [Walker's] defense." The trial court noted for the record that Walker's arms were not restrained and that the jury could not see the shackles because the front of the defense table was "completely covered, all the way down to the ground[.]" The trial court also indicated that there was "no reason" the shackles "should make any noise unless [Walker] intentionally cause[d] them to make noise." The trial court also stated as follows:

> I don't know if there's any prejudice, partly because your client has made it blatantly obvious that he's a prisoner because he chose, all day yesterday, to wear his prisoner uniform that says prisoner right on it, and we made a record of that.

The trial court further noted that Walker had been charged with "fleeing the police." Based on this, the trial court concluded that the shackles were appropriate.

The trial court was correct that Walker was charged with fourth-degree fleeing and eluding a police officer, and testimony at trial supported that Walker had led the police on a dangerous car chase and then fled on foot. However, there was no evidence on the record that Walker was a flight risk at the time of trial. Rather, the evidence only supported that Walker had fled from law enforcement and eluded arrest months before trial was held. Importantly, Walker was not shackled on the first day of trial, and defense counsel noted that there were "no incidents . . . when he wasn't shackled" on the first day of trial. The record supports defense counsel's argument. Because there was no evidence to suggest that Walker was a flight risk, that he was likely to attempt to escape,

or that shackles were needed to maintain order in the courtroom, the trial court abused its discretion by ordering Walker's legs to remained shackled. See *Payne*, 285 Mich App at 186-187.

However, "even if a trial court abuses its discretion by requiring a defendant to wear restraints [without justification], the defendant must show that he suffered prejudice as a result of the restraints to be entitled to relief." *Id*. at 186. In this case, Walker cannot show that he was prejudiced by the shackles. At trial, defense counsel was unable to articulate how the shackles impaired Walker's ability to communicate with her given that his arms were not restrained. Additionally, defense counsel conceded that the shackles would not be visible to the jurors, and Walker does not argue on appeal that the jury was able to see or hear his shackles. It is well settled that "a defendant is not prejudiced if the jury was unable to see the shackles on the defendant." *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008).

In addition, the jury was well aware that Walker was in custody because of Walker's decision to wear jail attire during the trial. On the first day of trial, shortly before jury selection, defense counsel stated to the trial court, "I have had discussions with [Walker] about potentially wearing street clothing or normal clothing instead of the jail garb, and he is refusing. I know that was offered by your court personnel, as well as I've offered to contact a family member for them [sic] to bring him clothing." The trial court asked Walker whether he would prefer to wear street clothing or to stay in his "jail blues." Walker responded, "Stay in blues." The trial court stated, "Well, usually, we go out of our way to make sure it does not appear that you are in custody. Do you understand that?" Walker confirmed that he understood. The trial court asked him, "So you're insisting on wearing the jail blues, correct?" Walker answered, "Yes." The trial court informed Walker that clothing was available if he changed his mind.

On the second day of trial, the trial court again asked Walker if he would like to change out of his jail attire. Walker answered that he had changed his mind, and that he would like new clothing if he could get out of the shackles, which irritated his foot. The trial court stated that Walker would still be shackled even if he elected to change his clothing. Walker stated, "Oh, never mind." The trial court informed Walker that, if he changed his mind, clothing would be made available to him. Consequently, because the jury did not see or hear the restraints, and because the jury was aware that Walker was in custody due to his decision to wear jail attire during trial, we conclude that Walker was not prejudiced by the trial court's decision to keep Walker's legs shackled for part of the trial.

## D. COURT COSTS

Walker argues that he is entitled to a remand so that the trial court can establish a factual basis for the $1,200 in court costs it imposed. The prosecutor concedes that remand is appropriate, and we agree for the following reasons.

Walker did not object to the trial court's imposition of court costs at sentencing, thereby rendering the issue unpreserved. *People v Johnson*, 315 Mich App 163, 197; 889 NW2d 513 (2016). We review unpreserved issues for plain error affecting substantial rights. *Id*. "In order for a defendant to establish plain error, he must show that (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *Id*.

"[C]ourts may impose costs in criminal cases only where such costs are authorized by statute." *People v Cunningham*, 496 Mich 145, 149; 852 NW2d 118 (2014). MCL 769.1k provides trial courts with the authority to impose "any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case[.]" MCL 769.1k(1)(b)(*iii*). Actual costs include:

(A) Salaries and benefits for relevant court personnel.

(B) Goods and services necessary for the operation of the court.

(C) Necessary expenses for the operation and maintenance of court buildings and facilities. [MCL 769.1k(1)(b)(*iii*).]

"Under this statute, trial courts must establish a factual basis from which this Court can determine whether the costs imposed were reasonably related to the actual costs incurred by the trial court." *People v Stevens*, 318 Mich App 115, 121; 896 NW2d 815 (2016) (quotation marks and citation omitted). When a trial court fails to follow that procedure, the defendant is entitled to a remand for the trial court to establish a factual basis for the costs it imposed, "or to alter that figure, if appropriate." *People v Konopka (On Remand)*, 309 Mich App 345, 360; 869 NW2d 651 (2015).

At sentencing, the trial court imposed $600 in court costs in each case against Walker. The trial court did not provide a factual basis for its assessments. We note that, in *People v Posey*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket Nos. 345491, 351834, and 346039), slip op at 12, lv pending, this Court held that the defendant's unpreserved challenge to the imposition of court costs did not require a remand, even though the trial court failed to establish a factual basis for the court costs it had imposed. In reaching that conclusion, this Court reasoned that the prosecution had, on appeal, produced information from the State Court Administrative Office (SCAO) estimating the average cost of a criminal case in Wayne Circuit Court. *Id*. In *Posey*, the trial court's remarks as to a codefendant made it clear that the court was relying on the SCAO information to calculate court costs. *Id*. In this case, however, the prosecution has not provided a SCAO estimate on appeal, and there is nothing in the record to verify that the trial court utilized such an estimate when calculating court costs. We therefore remand to the trial court so that the court can establish a factual basis to justify its imposition of $600 in court costs in each case or to alter those figures as necessary. See *Konopka (On Remand)*, 309 Mich App at 360.

### E. ATTORNEY FEES

Walker argues that the trial court erred by imposing attorney fees at sentencing because he is indigent and because the trial court did not assess his ability to pay the fees. We disagree.

Walker did not object to the trial court's imposition of attorney fees at sentencing, thereby rendering the issue unpreserved. *People v Jackson*, 483 Mich 271, 292 n 18; 769 NW2d 630 (2009). We review unpreserved issues for plain error affecting substantial rights. *Johnson*, 315 Mich App at 197.

We conclude that the trial court did not commit plain error by imposing $3,912.50 in fees for Walker's court-appointed attorney. MCL 769.1k(1)(b)(*iv*) provides that, at sentencing, "[t]he

-8-

court may impose . . . [t]he expenses of providing legal assistance to the defendant." In *Jackson*, 483 Mich at 275, our Supreme Court held that a trial court was not constitutionally required, before imposing a fee for a court-appointed attorney on a criminal defendant, to make an "ability-to-pay" determination—i.e., to "make a presentence articulation of its conclusion that the defendant has a foreseeable ability to pay the fee." Rather, "such an analysis is only required once the imposition of the fee is enforced." *Id*. Our Supreme Court explained, "[T]he state should not be forever precluded from seeking repayment from a defendant who has later gained the ability to pay, simply because at the time of sentencing it wrongly concluded that the defendant would never rise above indigency." *Id*. at 290.

In this case, the trial court imposed $1,137.50 in court-appointed attorney fees in Docket No. 351751, and $2,775 in court-appointed attorney fees in Docket No. 351752. Although the trial court did not address Walker's ability to pay at the time it imposed the fees, it was not required to do so because a defendant "is not entitled to an ability-to-pay assessment until the imposition of the fee is enforced." *Id*. at 292. Although Walker argues that the trial court has acted to enforce the fee, there is no evidence on the record that it has done so. When the trial court initiates enforcement, Walker will be entitled to notice and an opportunity to be heard as to whether he "is indigent and unable to pay *at that time* or whether forced payment would work a manifest hardship on [him] *at that time*." *Id*. at 292-293. Therefore, the trial court did not commit plain error by failing to conduct an ability-to-pay analysis at the time it imposed the fees. *Id*. at 292.

Affirmed as to Walker's convictions and sentences and the imposition of attorney fees, but remanded for the trial court to establish a factual basis for the imposition of $600 in court costs in each case. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Thomas C. Cameron