*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

UNPUBLISHED
March 14, 2024

v

No. 362834
Berrien Circuit Court
LC No. 2021-002251-FH

ARNOLD LEO DENNE,

      Defendant-Appellant.

Before: FEENEY, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

Defendant, Arnold Leo Denne, was arrested and charged after he sold cocaine in controlled buys on May 25 and June 1, 2021. A jury found defendant guilty on two counts of delivering less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), and one count of maintaining a drug vehicle, MCL 333.7405(1)(d). On appeal of right, defendant contends that the trial court erred in rejecting his argument that he was entrapped, in dismissing four potential jurors for cause pursuant to *People v Eccles*, 260 Mich App 379; 677 NW2d 76 (2004), and in denying his request to provide the jury with a missing-witness instruction. We affirm.

## I. FACTUAL BACKGROUND

On May 25 and June 1, 2021, defendant sold cocaine in controlled buys that were overseen by the Southwest Enforcement Team (SWET) at a Pilot gas station in Benton Harbor. Lieutenant Shawn Yech set up both controlled buys through an informant. Officer Eric Garcia and Sergeant Evan Hauger went undercover and participated in the controlled buys. Sergeant Hauger drove the pair to and from the drug transactions, and Officer Garcia served as the purchaser for both buys.

When the undercover officers arrived at the Pilot gas station for the initial buy on May 25, Sergeant Hauger pulled his car up along the left side of defendant's car, a silver Subaru Legacy. Officer Garcia got out of the car and approached the driver's side door of defendant's car. Officer Garcia gave defendant $40 and asked for crack cocaine. Defendant handed him a substance that Officer Garcia believed to be drugs. Officer Garcia then got back into Sergeant Hauger's car and they drove away. During the transaction, Sergeant Hauger checked the license plate of the Subaru

and discovered that the car was registered to defendant. The substance obtained by the undercover officers was confirmed by laboratory testing to be 0.27 grams of crack cocaine.

The second controlled buy took place on June 1 at the same gas station and again involved Sergeant Hauger driving Officer Garcia, who was acting as the buyer. When the pair of undercover officers arrived at the gas station, defendant's car—the same silver Subaru Legacy—was parked at a gas pump and defendant was standing outside the car. Sergeant Hauger recognized defendant and parked behind defendant's car. Officer Garcia approached defendant's car, and, at defendant's request, got into defendant's car, where defendant handed crack cocaine to Officer Garcia, who in turn paid defendant $80. Officer Garcia then left defendant's car, returned to Sergeant Hauger's vehicle, and left the scene. Laboratory testing revealed that the substance obtained from defendant contained cocaine base and weighed 0.72 grams.

Based upon the two controlled buys, defendant was charged with two counts of delivering less than 50 grams of a mixture containing cocaine, see MCL 333.7401(2)(a)(*iv*), and one count of maintaining a drug vehicle, see MCL 333.7405. At trial, both Sergeant Hauger and Officer Garcia identified defendant as the person who had sold the cocaine. On the first day of defendant's trial, Sergeant Hauger saw defendant driving the silver Subaru Legacy to the courthouse. Also that day, the prosecutor informed the trial court at the outset of the trial that Lieutenant Shawn Yech, who was identified on the prosecution's witness list, was unavailable to testify at trial.[1] The prosecutor said that Lieutenant Yech was on vacation and his testimony would be cumulative because he and the law-enforcement officers who testified were all involved in the surveillance of the controlled buys, although Lieutenant Yech was the officer involved in working with the informant to set up both controlled buys. Defense counsel asked the trial court to give the jurors an instruction about the missing witness, see M Crim JI 5.12, but the trial court denied that request.

Defendant did not present any witnesses at trial. Instead, defendant sought to develop his theory of the case through his cross-examination of the prosecution's witnesses and the challenging of the evidence presented by the prosecution. Defendant also contended that the prosecution had failed to establish that defendant was the person who delivered the packages to the undercover officer in the controlled buys, and that if defendant was present, the prosecution had failed to show that he knew the substance he had was cocaine. Despite defendant's arguments, the jury convicted him on all three counts. On August 8, 2022, the trial court sentenced defendant to serve concurrent six-month jail terms on the three counts of conviction, and defendant then appealed of right.

## II. LEGAL ANALYSIS

In this appeal, defendant contests his convictions, but not his sentences, on three grounds. First, defendant asserts that the trial court erred when it determined that he had not established that the charges in this case were the product of entrapment. Second, he argues that the trial court erred when it granted the prosecutor's for-cause challenges to four potential jurors based on this Court's decision in *Eccles*, 260 Mich App 379. Finally, defendant argues that the trial court erred when it

---

[1] Detective Jessica Frucci was also named on the prosecution's witness list and was unavailable to testify at trial, but defendant, on appeal, contests only the handling of Lieutenant Yech's absence.

denied his request for a jury instruction on a missing witness to address Lieutenant Yech's absence at trial. We will address these arguments in turn.

## A. ENTRAPMENT

Defendant argues that the trial court erred when it rejected his claim that the charges were the product of entrapment. The trial court conducted an extensive hearing outside the presence of the jury on the second day of trial, June 22, 2022. The issue of entrapment came up after defendant asked the trial court to give the jury a missing-witness instruction, M Crim JI 5.12, for Lieutenant Yech because the trial court had not granted the prosecution leave to remove him from the witness list and there was no stipulation to do so. Defense counsel argued that Lieutenant Yech's testimony would be favorable to defendant because Lieutenant Yech worked with the informant to set up the controlled buys, and that information could show bias on the part of the informant. After the trial court explained that it would not give a missing-witness instruction, defense counsel requested a "hearing outside the presence of the jury to determine the issue of entrapment." What ensued was a lengthy hearing at which witnesses testified, the parties presented competing arguments, and the trial court rejected defendant's entrapment claim on the merits. In resolving defendant's challenge to the trial court's ruling on that matter, "[w]e review de novo as a matter of law whether the police entrapped a defendant, but the trial court's specific findings of fact are reviewed for clear error." *People v Vansickle*, 303 Mich App 111, 114; 842 NW2d 289 (2013). "Findings of fact are clearly erroneous if we are left with a firm conviction that the trial court made a mistake." *Id*. at 115.

The entrapment defense is intended "to deter the corruptive use of governmental authority by invalidating convictions that result from law enforcement efforts that have as their effect the instigation or manufacture of a new crime by one who would not otherwise have been so disposed." *People v Juillet*, 439 Mich 34, 52; 475 NW2d 786 (1991). When the entrapment defense is raised, "the trial court must conduct an evidentiary hearing outside the presence of the jury." *Id*. at 61. At that hearing, the defendant must prove entrapment by a preponderance of the evidence. *Id*. In Michigan, entrapment takes place "if (1) the police engage in impermissible conduct that would induce an otherwise law-abiding person to commit a crime in similar circumstances or (2) the police engage in conduct so reprehensible that the court cannot tolerate it." *People v Akhmedov*, 297 Mich App 745, 753; 825 NW2d 688 (2012). Under the first prong, "Michigan has adopted a modified objective test when analyzing entrapment, looking primarily at police conduct but also requiring the court to consider 'the circumstances of the defendant to determine whether the police conduct would induce a similarly situated person, with an otherwise law-abiding disposition, to commit the charged crime.' " *Id*. at 752-753 (citation omitted). "[T]he police do not engage in entrapment merely by providing a defendant with the opportunity to commit a crime or by assisting an ongoing criminal conspiracy." *Id*. at 752.

In deciding "whether governmental activity would impermissibly induce criminal conduct, several factors are considered: (1) whether there existed appeals to the defendant's sympathy as a friend, (2) whether the defendant had been known to commit the crime with which he was charged, (3) whether there were any long time lapses between the investigation and the arrest, (4) whether there existed any inducements that would make the commission of a crime unusually attractive to a hypothetical law-abiding citizen, (5) whether there were offers of excessive consideration or other enticement, (6) whether there was a guarantee that the acts alleged as crimes were not illegal, (7) whether, and to what extent, any government pressure existed, (8) whether there existed sexual

favors, (9) whether there were any threats of arrest, (10) whether there existed any government procedures that tended to escalate the criminal culpability of the defendant, (11) whether there was police control over any informant, and (12) whether the investigation was targeted." *People v Johnson*, 466 Mich 491, 498; 647 NW2d 480 (2002).

When an informant is involved, the inquiry is whether "a normally law-abiding person in [defendant]'s circumstances would be induced into committing the crime charged because of the actions of the police through their paid informant." *Juillet*, 439 Mich at 65-66. "Only when the defendant can prove that the government agents engaged in activities that would impermissibly manufacture or instigate a crime will the defense of entrapment prevail." *Id*. at 61. "Reprehensible conduct by an informant may be attributed to the police if a sufficient agency relationship exists between the informant and the police." *Akhmedov*, 297 Mich App at 754. But "[t]he purpose of the entrapment defense is to deter police misconduct, not the misconduct of uninvolved third parties." *Id*. (concluding that defendant was not entrapped when the informant's misconduct was not attributable to the police because the police "had no control over him when he committed his reprehensible acts" and the only evidence of entrapment was the informant's misbehavior). When conducting this analysis, this Court looks "solely to the conduct of the police." *Id.* at 755.

Here, defendant contends that both controlled buys resulted from entrapment. To analyze whether the trial court erred in determining that defendant was not entrapped, we review the factors discussed in *Johnson*, 466 Mich at 498. Both defendant's argument and this Court's analysis are hindered by the fact that the entrapment hearing did not include testimony from either Lieutenant Yech or the informant. Defendant argues that he only sold the crack cocaine because the informant appealed to his sympathy as her friend. *Johnson*, 466 Mich at 498. Because this situation involves an informant, as opposed to conduct by a police officer, this Court also must consider the control the police had over the informant. See *id*. When considering the informant's conduct, we must decide whether her actions weighed in favor of a determination that defendant was entrapped and whether those actions are attributable to the police.

The informant's appeal to defendant's sympathy as a friend is a factor that weighs in favor of entrapment. See *id*. To the extent the trial court ruled that an appeal to friendship did not weigh in favor of entrapment, the ruling was erroneous. But that error is insubstantial because defendant did not establish that an otherwise law-abiding person would have been induced to commit a crime in a similar circumstance. Moreover, it was the informant who appealed to defendant's sympathy, and defendant failed to show that she did so at the direction of a police officer. The only evidence of any appeal to sympathy by the informant came from defendant's testimony at the entrapment hearing. Defendant testified that the informant told him that "she was under house arrest and that she wanted [defendant] to bring something to her Mexican boyfriend." Defendant made clear that he was aware that the "something" that the informant wanted him to deliver was crack cocaine.

Defendant's testimony reveals an appeal to his sympathy as the informant's friend, but that did not rise to the level that "a normally law-abiding person in [defendant's] circumstances would be induced into committing the crime charged . . . ." *Juillet*, 439 Mich at 65-66. Indeed, the focus must be on whether "governmental activity would impermissibly induce criminal conduct . . . ." *Johnson*, 466 Mich at 498. The other factors discussed in *Johnson* provide some guidance on the level of pressure this Court would consider to be persuasive in this analysis. See 466 Mich at 498. Examples include inducements that would make the commission of a crime unusually attractive to

a hypothetical law-abiding citizen, offers of excessive consideration, whether, and to what extent, government pressure existed, and whether there existed sexual favors. *Id*. The factors enumerated in *Johnson* demonstrate that the analysis focuses on the severity of the pressure exerted upon the defendant to commit the charged act. Defendant's testimony that the informant was under house arrest and wanted defendant to bring crack cocaine to her boyfriend falls short of establishing that the informant's request could induce an otherwise law-abiding person to commit a crime in similar circumstances. See *Akhmedov*, 297 Mich App at 753.

Moreover, police conduct is this Court's concern in analyzing entrapment. See *Akhmedov*, 297 Mich App at 754; *Juillet*, 439 Mich at 52, 61. Although defendant speculates on this subject, the record provides scant evidence to establish that the informant's appeal to defendant's sympathy as a friend was orchestrated by the police or known to the police. The only evidence on this issue came from defendant's investigator, who testified about a conversation he had with the informant a week before the hearing. That testimony merely indicated that the informant spoke to Lieutenant Yech after she got into trouble of her own, was offered a deal, and told Lieutenant Yech "I've got a buddy," so she then set up the buys through Lieutenant Yech. On this record, defendant has not shown that the informant's conduct—including the manner in which she convinced defendant to take part in the controlled buys—was undertaken as an agent of the police. Accordingly, although an appeal to sympathy is a factor that weighs in favor of entrapment when done by a police officer or at the direction of the police, defendant has not shown that that occurred here. See *Akhmedov*, 297 Mich App at 754-755. Simply stated, "[a]side from [the informant]'s misbehavior, defendant presented no other evidence that he had been entrapped by the police . . . ." *Id*. at 754.

Defendant argues the time lapse between the controlled buys and his arrest weighs in favor of a determination that he was entrapped. *Johnson*, 466 Mich at 498. Defendant has not explained how the six months that elapsed between the controlled buys and his arrest establish that the police acted impermissibly or that the police induced a crime. Without that explanation, defendant cannot show that the six-month period weighs in his favor in the analysis of whether the police engaged in impermissible conduct that would induce an otherwise law-abiding individual to commit a crime in a similar circumstance. See *Akhmedov*, 297 Mich App at 753.

"Looking solely to the conduct of the police," *Akhmedov*, 279 Mich App at 755, the trial court did not err in concluding that defendant failed to show by a preponderance of evidence that he had been entrapped. The fact that there was no evidence that defendant was known to commit the crimes with which he was charged weighs in his favor. But defendant failed to establish any "corruptive use of governmental authority" that entrapment is designed to deter. See *Juillet*, 439 Mich at 52. Thus, we must affirm the trial court's determination that the charges against defendant were not the product of entrapment.

## B. JUROR CHALLENGES FOR CAUSE

Defendant next contends that the trial court erred by dismissing four prospective jurors for cause in response to the prosecution's challenges and based on this Court's decision in *Eccles*, 260 Mich App 379. On appeal, defendant does not characterize the trial court's application of *Eccles* as erroneous. Instead, defendant argues that *Eccles* was wrongly decided. Because *Eccles* remains binding precedent, we decline defendant's invitation to revisit that ruling. See MCR 7.215(J)(1).

Challenges of potential jurors for cause are governed by MCR 2.511(E). A cause challenge may be advanced when a prospective juror "is or has been a party adverse to the challenging party or attorney in a civil action, or has complained of or has been accused by that party in a criminal prosecution," MCR 2.511(E)(10). In *Eccles*, the prosecutor challenged prospective jurors under MCR 2.511(D)(11)[2] because the prospective jurors had been the subject of misdemeanor criminal prosecutions by the same county prosecutor's office that brought the charges in that case. *Eccles*, 260 Mich App at 381. "[T]hat a prospective juror has been the subject of a criminal prosecution raises a question concerning that person's 'capacity to render a fair and impartial verdict' in a criminal matter." *Id*. at 383 (citation omitted). This Court concluded that the trial court did not err in granting the prosecutor's for-cause challenges in that situation. *Id*. at 383-384. Because the decision in *Eccles* was published, it constitutes binding precedent that we are bound to follow. See MCR 7.215(J)(1). Moreover, we are not persuaded by defendant's claim that *Eccles* was wrongly decided. Therefore, we affirm the trial court's dismissal of four prospective jurors for cause based on this Court's published decision in *Eccles*, 260 Mich App 379.

## C. MISSING-WITNESS INSTRUCTION

Finally, defendant insists that the trial court erred by declining to give the jury a missing-witness instruction set forth as M Crim JI 5.12. Defendant asserts that the trial court should have given the jury that instruction concerning Lieutenant Yech, who was identified as a witness on the prosecutor's witness list, but was not available for trial. This Court reviews "the appropriateness of a 'missing witness' instruction for an abuse of discretion." *Eccles*, 260 Mich App at 389.

At trial, defense counsel requested that the jury be given a missing-witness instruction, see M Crim JI 5.12, for Lieutenant Yech because the trial court had not granted leave for the prosecutor to remove him from the witness list and there was no stipulation to do so. The prosecutor explained that Lieutenant Yech had been served with a subpoena, which the prosecutor believed was all that was required. But the prosecutor acknowledged that the subpoena was sent late, i.e, a week before trial, because of a mistake on her part. Defense counsel claimed that the testimony of Lieutenant Yech would be favorable to defendant because Lieutenant Yech was the one who worked with the informant to set up the controlled buys, and that information could reveal bias on the part of the informant. But the trial court pointed out that the informant was not listed as a witness who could testify at trial, so the trial court questioned the relevance of the informant's credibility. Defense counsel also asserted that Lieutenant Yech's absence was prejudicial to defendant because he was the only person who could testify about the arrangement of the controlled buys. Nevertheless, the prosecutor insisted that Lieutenant Yech's testimony would not be helpful to defendant and argued that the missing-witness instruction was unwarranted when the testimony from the missing witness would not have helped defendant. The trial court ultimately agreed with the prosecutor and denied defendant's request for a missing-witness instruction.

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Everett*, 318 Mich App 511, 527; 899 NW2d 94 (2017) (quotation marks and citation omitted). The "missing witness instruction" set forth in M Crim JI 5.12 provides as

---

[2] When *Eccles* was decided, the applicable language was contained in MCR 2.511(D)(11). It was recently moved to MCR 2.511(E)(10).

follows: "[*State name of witness*] is a missing witness whose appearance was the responsibility of the prosecution. You may infer that this witness's testimony would have been unfavorable to the prosecution's case." "[T]he propriety of reading [the missing witness instruction] will depend on the specific facts of that case." *People v Perez*, 469 Mich 415, 420-421; 670 NW2d 655 (2003). A prosecutor who has endorsed a witness under MCL 767.40a(3) must "exercise due diligence to produce that witness at trial." *Eccles*, 260 Mich App at 388 (citation omitted). "A prosecutor who fails to produce an endorsed witness may show that the witness could not be produced despite the exercise of due diligence." *Id*. "If the trial court finds a lack of due diligence, the jury should be instructed that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case." *Id*., citing CJI2d 5.12.

Here, defendant argues that the trial court erred when it refused to give the jury the missing-witness instruction concerning Lieutenant Yech. The trial court found that the prosecutor had used due diligence to secure Lieutenant Yech's appearance at trial when she sent him a subpoena. The trial court also found that defendant had not shown that Lieutenant Yech's testimony would have been helpful to his case. In declining to give the jury a missing-witness instruction based on both of those reasons, the trial court did not commit an abuse of discretion. See *Eccles*, 260 Mich App at 389. And even assuming, for the sake of argument, that the trial court abused its discretion by declining to give a missing-witness instruction to the jury, that error was manifestly harmless.

Pursuant to MCL 769.26, "[n]o judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice." And "if an applicable instruction was not given, the defendant bears the burden of establishing that the trial court's failure to give the requested instruction resulted in a miscarriage of justice." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002), citing MCL 769.26 (further citation omitted). Reversal of a conviction is only warranted if "it affirmatively appears that it is more probable than not that the error was outcome determinative." *Id*. at 124-125 (citation omitted).

The evidence that defendant twice sold crack cocaine to Officer Garcia was overwhelming. Officer Garcia identified defendant at trial as the individual who sold crack cocaine to him. Officer Garcia had two face-to-face interactions with defendant during two controlled buys, when Officer Garcia had the opportunity to see defendant from a distance of a few feet. Sergeant Hauger, who also saw the individual who sold crack cocaine to Officer Garcia, identified defendant as the seller. Several officers described the vehicle that the seller drove to the controlled buys and testified that it was the exact same car that defendant drove to the trial. On this record, defendant cannot show that the trial court's refusal to give a missing-witness instruction to the jury constituted outcome-determinative error. See *Riddle*, 467 Mich at 124-125; MCL 769.26. Thus, we reject defendant's contention that the refusal to give the jury that instruction was reversible error.

Affirmed.

/s/ Kathleen A. Feeney
/s/ James Robert Redford
/s/ Christopher P. Yates